No. 24-5998

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BEONNAH FITZPATRICK et al., individual,
Plaintiff-Appellant individuals and as class representatives,
Plaintiffs and Appellants

v.

CITY OF LOS ANGELES, CITY OF LOS ANGELES DEPARTMENT OF
TRANSPORTATION and LOS ANGELES POLICE DEPARTMENT.
Defendants, Appellees and Cross-Appellants.

Appeal from the United States District Court
Case No. 2:21-cv-6841-JGB
Hon. Jesus G. Bernal

## APPELLEES ANSWERING BRIEF / CROSS-APPELLANT OPENING
## BRIEF

HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
SHAUN DABBY JACOBS, Supr. Deputy City Attorney (SBN 185073)
MICHAEL M. WALSH, Deputy City Attorney (SBN 150865)
200 North Spring Street, 14th Floor, City Hall
Los Angeles, California 90012-4130
Phone: (213) 978-2209 | Email: michael.walsh@lacity.org

Attorneys for Defendants, Appellees and Cross-Appellants
City of Los Angeles, City of Los Angeles Department of Transportation,
and Los Angeles Police Department

# Table of Contents

Table of Authorities ..................................................................................5

Introduction ...........................................................................................12

Jurisdictional Statement ........................................................................13

Statement of the Case ............................................................................13

    A.    The pleadings challenge the City's towing and impound policies. .........13

    B.    After the district court issues scheduling orders with discovery and motion deadlines, Plaintiffs request to continue all dates related to trial..........14

    C.    The district court grants partial summary judgment for Plaintiffs...........16

    D.    The district court denies Plaintiffs' untimely class certification motion and motion for relief. ...........................................................16

    E.    Plaintiffs settle all remaining claims.....................................................17

Answering Brief .....................................................................................18

Issues Presented .....................................................................................18

Summary of Argument ...........................................................................18

Legal Argument ......................................................................................20
  I.   McCarty Fails to Allege a Viable Claim.....................................................20

    A.    This Court reviews a motion to dismiss de novo. ...................................21

    B.    McCarty unlawfully parked his unregistered vehicle on a public road, so the City lawfully towed it. ...............................................................21

      1.    California mandates vehicle registration and bars unregistered vehicles from public roads...........................................................................22

2.   Caselaw confirms that McCarty has no valid claim because public entities may lawfully impound vehicles with expired registration in excess of six months..................................................................................23

II.      This Court Should Dismiss All Class Related Issues as Moot for Lack of a Class Representative. ...................................................................................26

III.     The District Court Properly Denied Plaintiffs' Untimely Class Certification Motion. ...............................................................................30

    A.   Class certification motions are within the district court's discretion.......30

    B.   The district court did not abuse its discretion by denying Plaintiffs' untimely class certification motion....................................................31

IV.      Plaintiffs Were Not Entitled to Ignore the Court's Orders and then Demand Relief in a Belated Rule 6(b)(1)(B) Motion..........................................36

    A.   Relief under Rule 6(b)(1)(B) falls within the court's discretion. ............36

    B.   The district court did not abuse its discretion by rejecting Plaintiffs claim of excusable neglect....................................................................37

        1.   Plaintiffs' preference for dilatory tactics caused the delay......................38

        2.   Plaintiffs cannot escape the inherent prejudice from their unreasonable delay tactics. ...................................................................................41

        3.   The lengthy delay would have significantly impacted the judicial proceedings....................................................................................43

        4.   Even if not outright bad faith, Plaintiffs' "indolent and disinterested" tactics do not support granting relief.............................................45

    C.   *Pioneer* does not support Plaintiffs.........................................................48

Conclusion to Appeal.....................................................................................50

Cross-Appellant's Brief .................................................................................50

Issues Presented ....................................................................................... 51

Summary of Argument .............................................................................. 51

Legal Argument ......................................................................................... 52

   I.   The Community Caretaking Doctrine Authorizes the Impound of an Illegally Parked Vehicle. ............................................................................................ 52

   II.     Plaintiffs Failed to Allege a Viable Claim for Procedural Due Process. . 55

      A.   The Court reviews the validity of this claim de novo. ............................. 56

      B.   Plaintiffs lack standing to challenge a process they never engaged. ....... 57

      C.   Plaintiffs' procedural due process claim fails because the City has adequate pre- and post-impound procedures in place. ..................................... 61

         1.   Vehicle owners have both pre-impound notice and an opportunity to be heard. ................................................................................................... 62

         2.   Vehicle owners also have adequate post-impound procedures. ............... 65

      D.   Consideration of the *Matthews* elements confirms the failure of Plaintiffs' procedural due process claim. ......................................................... 68

   III.    The District Court Erred by Reviewing Plaintiffs' Equal Protection Claim on a Strict Scrutiny Basis. .......................................................................... 75

Cross-Appeal Conclusion ......................................................................... 81

Certificate of Compliance ......................................................................... 83

# Table of Authorities

**Page(s)**

## Cases

*ABS Ent., Inc. v. CBS Corp.*,
  908 F.3d 405 (9th Cir. 2018) ...................................................................31

*Alviso v. Sonoma Cnty. Sheriff's Dep't*,
  186 Cal.App.4th 198 (2010) ................................................... 68, 69, 72

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................ 56, 57

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010) .................................................................30

*Bearden v. Georgia*,
  461 U.S. 660 (1983).................................................................................77

*Bell Atlantic Corp. v. Twombly*,
  550 US 544 (2007).....................................................................................56

*Bertrand ex rel. Bertrand v. Maram*,
  495 F.3d 452 (7th Cir. 2007) ................................................................34

*Brady v. AutoZone Stores, Inc.*,
  960 F.3d 1172 (9th Cir. 2020) ............................................... 27, 28, 29

*Brunswick Assocs. Ltd. P'ship*,
  507 U.S. 380 (1993) ................................................... 36, 38, 48, 49

*Buckingham v. Sec'y of U.S. Dep't of Agric.*,
  603 F.3d 1073 (9th Cir. 2010) .............................................................57

*California First Amendment Coalition v. Calderon*,
  150 F3d 976 (9th Cir. 1998) .................................................................52

*Campion v. Old Republic Prot. Co.*,
  775 F.3d 1144 (9th Cir. 2014) ................................................ 28, 29

*City of Cleburne, Tex. v. Cleburne Living Center*,
  473 U.S. 432 (1985)..................................................................................76

*City of Memphis v. Greene*,
  451 U.S. 100 (1981).................................................................................53

*Clement v. City of Glendale*,
  518 F.3d 1090 (9th Cir. 2008) ..............................................................24

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)....................................................................................33

*Comm. for Idaho's High Desert, Inc. v. Yost*,
  92 F.3d 814 (9th Cir. 1996) ...................................................................36
*Conner v. City of Santa Ana*,
  897 F.2d 1487 (9th Cir. 1990) ...............................................................66
*Crook v. Los Angeles Cnty. Sheriff's Dep't*,
  No. EDCV191935JVSAS, 2020 WL 556416 (C.D. Cal. Jan. 14, 2020) ............24
*Dahl v. City of Huntington Beach*,
  84 F.3d 363 (9th Cir. 1996) ...................................................................42
*David v. City of L.A.*,
  307 F.3d 1143 (9th Cir. 2002) ...................................................... 66, 71
*Davidson v. O'Reilly Auto Enters., LLC*,
  968 F.3d 955 (9th Cir. 2020) ...................................................... 30, 31, 33
*Davis v. Westgate Planet Hollywood Las Vegas, LLC*,
  No. 2:08-CV-00722-RCJ-PA, 2009 WL 5038508 (D. Nev. Dec. 15, 2009) .......33
*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) .................................................................21
*Desert Outdoor Advertising, Inc. v. City of Moreno Valley*,
  103 F.3d 814 (9th Cir. 1996) .................................................................60
*Doninger v. Pac. N.W. Bell, Inc.*,
  564 F.2d 1304 (9th Cir. 1977) ...............................................................30
*Dorsey v. Barba*,
  38 Cal.2d 350 (1952) ...........................................................................22
*Dragovich v. United States Department of the Treasury*,
  764 F.Supp.2d 1178 (N.D. Cal. 2011)......................................................60
*Envt'l Def. Ctr. v. Gordon*,
  849 F.2d 1241 (9th Cir. 1988) ...............................................................28
*F.C.C. v. Beach Communications, Inc.*,
  508 U.S. 307 (1993)..................................................................... 76, 80
*Friery v. Los Angeles Unified Sch. Dist.*,
  448 F.3d 1146 (9th Cir. 2006) ...............................................................58
*GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*,
  650 F.3d 1257 (9th Cir. 2011) ...............................................................30
*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)..............................................................................37
*Gill v. Whitford*,
  584 U.S. 48 (2018)................................................................................57
*Goichman v. Rheuban Motors, Inc.*,
  682 F.2d 1320 (9th Cir. 1982) ...................................................... 54, 66
*Gombert v. Lynch*,
  541 F. Supp. 2d 492 (D. Conn. 2008)......................................................54

*Gonzalez v. Gov't Emps. Ins. Co. Inc.*,
  2021 WL 4805199 (C.D. Cal. Aug. 30, 2021) ...................................................40
*Griffin v. Illinois*,
  351 U.S. 12 (1956)........................................................................................77
*Halajian v. D & B Towing*,
  209 Cal.App.4th 1 (2012) ......................................................................... 22, 25
*Hallett v. Morgan*,
  296 F.3d 732 (9th Cir. 2002) .........................................................................37
*Hupp v. City of Walnut Creek*,
  389 F.Supp. 2d 1229 (N.D. Cal. 2005)............................................................66
*Hyde v. City of Willcox*,
  23 F.4th 863 (9th Cir. 2022) .........................................................................56
*Hylton v. Towing*,
  563 Fed.Appx 570 (9th Cir. 2014)..................................................................25
*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
  460 F.3d 1217 (9th Cir. 2006) .......................................................................42
*In re Prime Healthcare ERISA Litig.*,
  No. 820CV01529JLSJDE, 2023 WL 9319290 (C.D. Cal. Dec. 28, 2023) .........32
*In re Veritas Software Corporation Securities Litigation*,
  496 F.3d 962 (9th Cir. 2007) .................................................................. 39, 40
*In re Wallace*,
  490 B.R. 898 (B.A.P. 9th Cir. 2013) ...............................................................37
*Independent Towers of Wash. v. Wash.*,
  350 F.3d 925 (9th Cir. 2003) .........................................................................21
*Jehl v. S. Pac. Co.*,
  66 Cal.2d 821 (1967) ...................................................................................22
*Jordan v. City of Lake Oswego*,
  734 F.2d 1374 ....................................................................................... 66, 71
*Kaufman v. City of S.F.*,
  434 Fed.Appx. 583 (9th Cir. 2011)..................................................................58
*Kildare v. Saenz*,
  325 F.3d 1078 (9th Cir. 2003) .......................................................................58
*Kyle v. Campbell Soup Co.*,
  28 F.3d 928 (9th Cir. 1994) ...........................................................................39
*Laine v. City of Livermore*,
  2016 WL 6427873 (N.D. Cal. Oct. 31, 2016) ...................................................25
*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .........................................................................76
*Leslie v. City of Sand City*,
  615 F.Supp.2d 1121 (N.D. Cal. 2009)..............................................................24

*Love v. City of Monterey*,
   37 Cal. App. 4th 562 (1995) ...............................................................64

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...........................................................................58

*M.L.B v. S.L.J.*,
   519 U.S. 102 (1996) ...........................................................................78

*Madsen v. Boise State Univ.*,
   976 F.2d 1219 (9th Cir. 1992) ................................................ 58, 59, 60

*Mann v. State of California*,
   106 Cal. App. 5th 941 (2024) ............................................................67

*Matthews v. Eldridge*,
   424 U.S. 319 (1979) ................................................................... 57, 68

*Mendoza v. Strickler*,
   51 F.4th 346 (9th Cir. 2022) ...................................................... passim

*Miller v. Reed*,
   176 F.3d 12026 (9th Cir. 1999 ..........................................................69

*Mills v. Menchaca*,
   878 F.2d 386 (9th Cir. 1989) .............................................................65

*Miranda v. City of Cornelius*,
   429 F.3d 858 (9th Cir. 2005) ..................................................24, 70, 73

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ..............................................................33

*Pagtalunan v. Galaza*,
   291 F.3d 639 (9th Cir. 2002) .............................................................44

*People v. Hughes*,
   202 Cal.App.4th 1473 (2012) ............................................................26

*People v. Redd*,
   48 Cal.4th 691 (2010) ....................................................................25, 26

*People v. Suff*,
   58 Cal.4th 1013 (2014) ......................................................................26

*People v. Sullivan*,
   29 N.Y.2d 69, 323 N.Y.S.2d 945, 272 N.E.2d 464 (1971) ...................54

*Pimentel v. City of L.A.*,
   974 F.3d 917 (9th Cir. 2020) .............................................................72

*Platt v. Moore*,
   15 F.4th 895 (9th Cir. 2021) ..............................................................59

*Prado v. City of Berkeley*,
   No. 23-CV-04537-EMC, 2024 WL 3697037 (N.D. Cal. Aug. 6, 2024)..............54

*Pryor v. Aerotek Sci., LLC*,
   278 F.R.D. 516 (C.D. Cal. 2011).................................................46, 47, 48

8

*Reyna v. Comm'r of Soc. Sec.*,
    548 Fed.Appx 404 (9th Cir. 2013)....................................................37
*Robertson v. FedEx Nat. Ltl, Inc.*,
    2010 WL 10020690 (C.D. Cal. ]an. 5, 2010) ...............................44
*Rosemont Taxicab Co. v. Philadelphia Parking Auth.*,
    327 F. Supp. 3d 803 (E.D. Pa. 2018).............................................55
*Schweiker v. McClure*,
    456 U.S. 188 (1982)..........................................................................71
*Scofield v. City of Hillsborough*,
    862 F.2d 759 (9th Cir. 1988) ........................................................23
*South Dakota v. Opperman*,
    428 U.S. 364 (1976)....................................................... 23, 53, 54, 55
*StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*,
    143 S. Ct. 424 (2022)................................................................ 33, 34
*Stypmann v. City & Cnty. of San Francisco*,
    557 F.2d 1338 (9th Cir. 1977) ......................................................54
*Terry v. Ohio*,
    392 U.S. 1 (1968)...............................................................................72
*Thornton v. City of St. Helens*,
    425 F.3d 1158 (9th Cir. 2005) ................................................ 76, 77
*United Constr. Prods., Inc. v. Tile Tech, Inc.*,
    843 F.3d 1363 (Fed. Cir. 2016) ....................................................44
*United States v. Caseres*,
    533 F.3d 1064 (9th Cir. 2008) ......................................................54
*United States v. Cervantes*,
    703 F.3d 1135 (9th Cir. 2012) ......................................................54
*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) ......................................................31
*United States v. LaFountain*,
    252 F. Supp. 2d 883 (D.N.D. 2003)..............................................55
*United States v. McCartney*,
    550 F.Supp.2d 1215 (E.D.Cal.2008) .............................................24
*United States v. Miller*,
    953 F.3d 1095 (9th Cir. 2020) ......................................................74
*United States v. Skinner*,
    957 F. Supp. 228 (M.D. Ga. 1997) ...............................................55
*United States v. Treadwell*,
    593 F.3d 990 (9th Cir. 2010) ........................................................74
*Verdun v. City of San Diego*,
    51 F.4th 1033 (9th Cir. 2022) .......................................................72

9

*Verduzco v. Apfel*,
    188 F.3d 1087 (9th Cir. 1999) ...........................................................71
*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ...........................................................30
*Yagman v. Garcetti*,
    852 F.3d 859 (9th Cir. 2017) ................................................... passim
*Yagman v. Garcetti*,
    No. 2014 WL 3687279 (C.D. Cal. July 9, 2014) .................................64

## Statutes

28 U.S.C. § 1291 ...............................................................................13
42 U.S.C. § 1983 .........................................................................23, 76

California Vehicle Code
    section 4000 ....................................................................22, 69, 72
    section 4000(a)(1) ...............................................................22, 72
    section 4001.3 ..........................................................................22
    section 22650(b) ......................................................................22
    section 22650(c) ......................................................................65
    section 22650(d) ......................................................................65
    section 22852(e) ......................................................................61
    section 22651(i) ..........................................................69, 71, 73, 74
    section 22651(o)(1) ............................................................24, 25
    section 22651(i)(1)(C) ........................................................68, 71
    section 22651(o)(1)(A)(i) ..........................................................22
    section 22651(o) .......................................................15, 18, 23, 24
    section 22651(o)(1)(A) ........................................................25, 26
    sections 22650, 22852 ........................................................61, 65
    sections 22852, 22650 ..................................................56, 65, 66
    section 22850.5 ........................................................................68
    section 22852(c) ......................................................................65
    section 40215(a) ......................................................................63
    section 40215(b), (c)(3) ...........................................................63
    section 40215(c)(7) ............................................................64, 79
    section 40230 ..........................................................................64
    sections 40215(b) and (c)(7), 40220 .......................................79
    sections 40215(b), 40220 .........................................................64
    sections 40215, 40239..............................................................56

**Rules**

Federal Rule of Civil Procedure
Rule 4(a)(1)(A) and (a)(3) ...................................................................13
Rule 6(b) ....................................................................................... 12, 18
Rule 6(b)(1)(B) ........................................................................ 12, 17, 20
Rule 23 .......................................................................................... 33, 34
Rule 23(c)(1)(A) ..................................................................... 20, 31, 39
Rule 23(f) ..........................................................................................34
Rule 23(a) ..........................................................................................34
Rule 23(b) ..........................................................................................34
Rule 23(c) ..........................................................................................34
Rule 68 ......................................................................................... 17, 27

**Other Authorities**

U.S.Dist.Ct.Rules C.D.Cal., Rule 23-3 ............................... 20, 31, 34, 39

## Introduction

The Court should affirm judgment in favor of the City because the appeal is moot as to the class issues, and the district court properly dismissed and denied the remaining claims. The underlying issues arise from the challenge of plaintiffs Breonnah Fitzpatrick and Christopher Officer (collectively "Plaintiffs") to any attempt by Defendant City of Los Angeles (the City) to impound vehicles that accumulate five or more unpaid parking citations. The Court should affirm on the four specific issues raised in Plaintiffs' appeal. First, plaintiff Timothy McCarty does not have a viable claim since the City impounded his vehicle for being on a City street with long-expired registration. Second, Fitzpatrick's and Officer's settlement of all financial interests in this lawsuit make their attempt to appeal on behalf of a putative class moot. Third, the district court did not abuse its discretion by denying Plaintiffs' class certification motion as untimely. Fourth, the district court did not abuse its discretion by denying Plaintiffs' motion for relief under Federal Rule of Civil Procedure 6(b)(1)(B) (hereafter "Rule 6(b)" or "Rule 6(b)(1)(B)").

A full affirmance of the appeal will moot the cross-appeal. However, if the Court reverses any portion of the judgment and remands for further proceedings, then the City seeks to reverse the district court's orders on the following three

issues in its protective cross-appeal.  First, the Court should confirm the established law that the City may impound any vehicle that is illegally parked under the community caretaking doctrine.  Second, the Court should reverse the district court's ruling that denied the City's Rule 12 motions on Plaintiffs' procedural due process claim, because the City provides adequate pre-impound notice and opportunity to be heard, in addition to adequate post-impound hearings.  Third, the Court should reaffirm that the correct standard of review for an equal protection claim based on the inability to pay in a civil context is rational basis, and not strict scrutiny.

## Jurisdictional Statement

The district court entered Judgment on September 23, 2024.  1- ER1-2.  Plaintiffs filed their Notice of Appeal September 30, 2024.  2-ER-177, 316.  The City filed its notice of cross-appeal on October 15, 2024.  SER-3, 2-ER-316.  (October 14, 2024 was Columbus Day.)  The appeal and cross-appeal are thus each timely and this Court has jurisdiction.  28 U.S.C. § 1291; Fed.R.App.Proc. 4(a)(1)(A) and (a)(3).

## Statement of the Case

### A. The pleadings challenge the City's towing and impound policies.

Plaintiffs initiate this lawsuit and putative class action on August 25, 2021, challenging the City's policy of impounding vehicles with at least five unpaid

parking citations, under the Fourth and Fifth Amendments as an improper seizure and taking. 2-ER-285, 303. The initial complaint includes additional individually named defendants and sub-entities of the City who Plaintiffs later dismiss voluntarily. See 2-ER-266, 244:18-245:7; 1-ER-25, 137. Plaintiffs file an amended complaint as a matter of right and the City unsuccessfully moves to dismiss. 1-ER-158. The City later releases Fitzpatrick and Officer's vehicles from impound, in partial response to the district court's order, after just over 30 days in impound. See 1-ER-29, 30.

**B. After the district court issues scheduling orders with discovery and motion deadlines, Plaintiffs request to continue all dates related to trial.**

The district court issues a Civil Trial Scheduling Order on March 23, 2022. 1-ER-144-156. With regard to motions, the order set the following deadlines: (1) The last day to file a motion to amend pleadings or add a party: June 20, 2022; (2) The last say to hear discovery motions: March 27, 2023; (3) The dispositive motion hearing cut-off: June 5, 2023; and, (4) The Pre-Trial Conference was set for July 17, 2023. 1-ER-144. Regarding motions, the order explained: "The cut-off date applies to all non-discovery motions except motions directly related to the conduct of trial." 1-ER-145:8-9.

Plaintiffs file a Second Amended Complaint which adds Timothy McCarty as an additional plaintiff and additional theories challenging the same impound

policy. 2-ER-266. Per the complaint, the City impounded McCarty's vehicle "because the vehicle did not have current registration" and was located on a City street, per California Vehicle Code § 22651(o)[1], 2-ER-272:9-28. The district court denies in part and grants in part a motion to dismiss, including the dismissal of McCarty on the grounds that "Mr. McCarty cannot allege a Fourth Amendment violation where his vehicle was lawfully towed for expired registration." 1-ER-132-133, 137.

In response to the City's Motion to Dismiss Plaintiffs' Third Amended Complaint, the district court grants in part and dismisses in part. 1-ER-123. The district court denies the City's Motion to Dismiss the Fourth Amended Complaint, including on the new theories of procedural due process and equal protection. 1-ER-46.

On March 7, 2023, the district court grants a stipulation to extend some of the previous deadlines, including extending the dispositive motion hearing cut-off to June 3, 2024, the Pre-Trial Conference to July 15, 2024, and the trial to July 30, 2024. 1-ER-44. The district court explains that it granted the stipulation "with some hesitation and on the understanding that the parties will continue to meaningfully advance the litigation in timely fashion." 1-ER-42. The district

---

[1] Unless specified, all statutory references will be to the California Vehicle Code.

court also notes that "[b]ecause dispositive motions like a motion for summary judgment" would not likely be heard until June 2024, "the Court also expects that the parties would file any interim motions (if they so choose) advancing the litigation sooner rather than later" and "to work as efficiently as possible moving forward, to file any future pleadings or motions in timely fashion…" 1-ER-42-43.

### C. The district court grants partial summary judgment for Plaintiffs.

On May 6, 2024, on the last day for timely notice, Plaintiffs move for partial summary judgment as to the Fourth and Fifth Amendment claims and regarding *Monell* liability on those claims. 1-ER-26. The district court partially grants the motion. The district court grants the motion as to Fitzpatrick's claims. The court grants as to most of Officer's claims, denies regarding the initial seizure of his vehicle, but grants as to the later ongoing impoundment. 1-ER-40.

### D. The district court denies Plaintiffs' untimely class certification motion and motion for relief.

On May 20, 2024, two weeks after the last pre-trial motion cut-off date, Plaintiffs notice a motion for class certification. 2-ER-192-193. The City opposes, partially on the grounds that the motion was untimely. See 2-ER-185. In reply on that issue, Plaintiffs offer no explanation, insist the district court did not impose a deadline for filing the certification motion, and did not ask for an extension or relief for filing a late motion. 1-ER-22-23. The district court states that Plaintiffs'

16

position "defies logic" and was "patently unreasonable" and denies the motion as untimely. 1-ER-23.

Ten days after that order, on June 24, 2024, Plaintiffs move for relief under Rule 6(b)(1)(B) to file a late motion for certification. 1-ER-10. Anticipating settlement if the district court denies the request to file a late motion, the parties stipulate to continuing the trial date and the district court approves. 1-ER-16. The district court denies the motion for relief on July 17, 2024. 1-ER-13-15.

### E. Plaintiffs settle all remaining claims.

Plaintiffs accept the City's Offer of Judgment under Federal Rule of Civil Procedure 68 ("Rule 68"). SER-8. Plaintiffs confirm that the acceptance of settlement was "inclusive of attorney fees and costs" and "their respective individual claims." SER-8:19-22. Plaintiffs also state that they did not act in "their respective capacities as putative class representatives." SER-8:20. The district court entered Judgment September 23, 2024. 1-ER-2.

Plaintiffs timely appeal on September 30, 2024. 2-ER-177. The City timely cross-appeals on October 15, 2024. SER-3.

# Answering Brief

## Issues Presented

1. Did the district court properly dismiss Timothy McCarty's claim?

2. Can an appeal proceed for a putative class without a class representative? Alternatively, can a purported class representative bring an appeal on behalf of a putative class after eliminating all of that person's financial interests in the litigation?

3. Did the district court abuse its discretion in denying Plaintiffs' motion for class certification as untimely under the court's orders and court rules?

4. Did the district court abuse its discretion in denying Plaintiffs' motion for relief under Rule 6(b)?

## Summary of Argument

The City impounded McCarty's vehicle because its registration was more than six months out of date and the vehicle was parked on a public street. The district court properly dismissed his claim because California law bars an unregistered vehicle from public streets, where no one can legally operate the vehicle. As a result, under Vehicle Code § 22651(o) the City may impound a vehicle with registration at least six months out of date on a public street under the

community caretaking doctrine. The Court should affirm the dismissal of McCarty's claims.

Since Plaintiffs belatedly sought to certify a class action, the district court correctly denied the motion as untimely. Plaintiffs then settled all remaining claims. While Plaintiffs attempted to retain their ability to pursue a class action, the settlement terms left them no remaining financial interest in this lawsuit. Thus, they no longer qualify as class representatives and the Court should dismiss the appeal of the class related issues as moot.

Even if the Court considers the class-related portion of the appeal, it should still affirm. The district court did not abuse its discretion in denying the class certification motion as untimely under the court-imposed deadline and pursuant to court's inherent ability to control the litigation of pending matters. When the district court reluctantly granted a stipulation to continue litigation deadlines it warned the parties "to work as efficiently as possible moving forward, to file any future…motions in timely fashion" and "to meaningfully advance the litigation in timely fashion." See 1-ER-42-43. The district court properly rejected Plaintiffs' assertion that since it did not specifically name class certification motions in the scheduling order that Plaintiffs could delay filing the motion for a long as they liked. In addition, the late filing flouted court rules which require a party to file a class certification motion at "an early practicable time," while local rules similarly

compel a party to file a certification motion at "the earliest possible time." See

Fed. R. Civ. P. 23(c)(1)(A); U.S.Dist.Ct.Rules C.D.Cal., Rule 23-3.

Similarly, the district court did not abuse its discretion by denying Plaintiffs'

motion for relief under Rule 6(b)(1)(B) to file an untimely certification motion and

Plaintiffs did not meet the elements for that relief. The only cause for the delay

was Plaintiffs' repeatedly dilatory tactics and their unreasonable presumption that

no deadline existed whatsoever to file a potential class certification motion.

Because the delayed motion infringed on the limited time to prepare for trial and to

meet all the pre-trial deadlines, and a last-minute certification motion might require

the parties to redo all the pre-trial work, do more discovery, and delay the trial, the

district court correctly found both prejudice to the City and an unjustified

disruption of the judicial proceedings. Finally, while the district court found the

element of bad faith neither favored nor opposed granting relief, the facts show

that Plaintiffs did not act in good faith and their pervasive dilatory tactics drove

this outcome.

## Legal Argument

### I.      McCarty Fails to Allege a Viable Claim.

The district court correctly ruled that McCarty failed to allege a viable claim.

In the opening brief, McCarty fails to address the case cited by the district court on

this issue or any other authority specific to the facts of his claim. Instead, McCarty

relies on general statements of law that fail to address the basis for his dismissal. The Court should affirm.

## A. This Court reviews a motion to dismiss de novo.

Because the district court dismissed McCarty's claim pursuant to Rule 12(b), this Court reviews that ruling de novo. *Depot, Inc. v. Caring for Montanans, Inc*., 915 F.3d 643, 653 (9th Cir. 2019). However, while the Court will "accept as true all factual allegations," that are made in the operative complaint, it does not "accept as true allegations that are conclusory" or "consider factual assertions made for the first time on appeal…" *Id*. (cleaned up).

Because McCarty offers no argument or discussion in support of a Fifth Amendment claim, he waived this argument on appeal. See AOB at 12-14. See *Independent Towers of Wash. v. Wash*., 350 F.3d 925, 929 (9th Cir. 2003) ("[W]e review only issues which are argued specifically and distinctly in a party's opening brief. Significantly, a bare assertion of an issue does not preserve a claim.") (internal quotation omitted). In any case, McCarty's Fifth Amendment claim is wholly dependent on the viability of his Fourth Amendment claim. 1-ER-132.

## B. McCarty unlawfully parked his unregistered vehicle on a public road, so the City lawfully towed it.

Because the City was legally entitled to remove McCarty's unregistered vehicle from the public road – a vehicle that could not be lawfully driven on any

public road – McCarty has no viable claim.  Thus, the district court correctly dismissed him as a party.

### 1. California mandates vehicle registration and bars unregistered vehicles from public roads.

All California vehicles existing on a public road must be registered.  Veh. Code § 4000(a)(1).  "The requirements for registration were enacted in the interests of public welfare," including the identification of vehicles and responsible persons, as well as insuring that the vehicle met all safety and environmental requirements for use on public roads.  *Dorsey v. Barba*, 38 Cal.2d 350, 354 (1952)[2]; and see Veh. Code § 4001.3 (environmental requirements for registration).  The registration requirement in section 4000 is "intended to further public safety." *Halajian v. D & B Towing*, 209 Cal.App.4th 1, 16 (2012).

A peace officer "may remove" any vehicle "found or operated" on a public road "[w]ith a registration expiration date in excess of six months before the date it is found…"  Veh. Code § 22651(o)(1)(A)(i).  The California Legislature clarified that any removal of a vehicle constitutes a seizure under the federal and state constitutions.  Veh. Code § 22650(b).  Thus, any vehicle removal must satisfy constitutional requirements, including removals "based on community caretaking." *Id*.  Under the community caretaking doctrine, "[t]he authority of police to seize

---

[2] Overruled on other grounds by *Jehl v. S. Pac. Co.*, 66 Cal.2d 821 (1967).

and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976).

> **2. Caselaw confirms that McCarty has no valid claim because public entities may lawfully impound vehicles with expired registration in excess of six months.**

Both federal and state courts agree that a government entity may lawfully impound a vehicle that remains unregistered for more than six months without notice. In *Scofield v. City of Hillsborough*, 862 F.2d 759, 761 (9th Cir. 1988), an officer found the plaintiff's vehicle in a no-parking zone and discovered its registration expired over a year before. The officer impounded the vehicle for lack of registration under Vehicle Code § 22651(o). The plaintiff sued under 42 U.S.C. § 1983, alleging a violation of his due process rights for lack of pre-towing notice and a hearing. *Id.* at 762. This Court affirmed the district court's ruling against the plaintiff:

> "We hold that due process does not require that a pre-towing notice be given to the owner of a vehicle which has been unregistered for more than one year from the date on which it is found parked on a public street before the car can be towed under California Vehicle Code § 22651(o)" *Scofield v. City of Hillsborough*, 862 F.2d 759, 764 (9th Cir. 1988).

"An impoundment may be proper under the community caretaking doctrine if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle…" *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005). *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008), favorably cites *Scofield* on this point, but distinguishes it from a vehicle that had a valid PNO (planed non-operation) certificate, "an alternate form of registration." *Id*. at 1092 and 1096. And see *Crook v. Los Angeles Cnty. Sheriff's Dep't*, No. EDCV191935JVSAS, 2020 WL 556416, at *3 (C.D. Cal. Jan. 14, 2020) (citing both *Scofield* and *Clement* to support impound without notice when vehicle registration expired more than six months before).

In *Leslie v. City of Sand City*, 615 F.Supp.2d 1121, 1126 (N.D. Cal. 2009) the vehicle's registration had expired almost two years before the police impounded it under Vehicle Code § 22651(o). The district court rejected the plaintiff's Fourth Amendment unlawful seizure claim, and found the impound reasonable under the community caretaking rule with no constitutional violation. *Id*. at 1125-1126; see also *United States v. McCartney*, 550 F.Supp.2d 1215, 1225 (E.D.Cal.2008) (finding that police lawfully impounded truck under Vehicle Code § 22651(o)(1), because registration expired over six months before), aff'd, 357 Fed.Appx. 73 (9th

24

Cir.2009); and *Hylton v. Towing*, 563 Fed.Appx 570 (9th Cir. 2014)

(affirming impound for outdated registration under community caretaking).

Similarly, in *Laine v. City of Livermore*, 2016 WL 6427873, at *2 (N.D. Cal.

Oct. 31, 2016), the plaintiff's vehicle was indisputably "unregistered for

several years when the City towed and impounded it."  There is "no

question" that the City had the right to tow plaintiff's vehicle under section

22651(o)(1)(A).  *Id.* at *1.

California state courts agree.  In *Halajian*, an officer stopped plaintiff's

vehicle and discovered that he was unlicensed and the vehicle was not registered.

*Halajian*, 209 Cal.App.4th at 6.  The vehicle was parked in a public parking lot and

was not impeding traffic when the officer impounded the vehicle.  The court ruled

that leaving the unregistered vehicle "would have created a risk that the truck

would be driven again while unregistered," which was unlawful and threatened the

"public safety" function of vehicle registration.  *Id*. at 16.  *Halajian* upheld the

impound under the community caretaking doctrine because the "decision to

impound plaintiff's truck promoted public safety by preventing the truck from

being operated on public highways and streets while it remained unregistered."  *Id*.

Several additional California cases also recognize that Vehicle Code

§ 22651(o)(1) authorizes police officers to impound any vehicle violating its terms

without any suggestion that this posed any concern or legal issue.  E.g., see *People*

*v. Redd*, 48 Cal.4th 691, 721 (2010) ("a peace officer may remove a vehicle found on an off-street parking facility with a registration expiration date in excess of six months prior to the date the vehicle is found"); *People v. Suff*, 58 Cal.4th 1013, 1056 (2014) ("Upon determining that the registration of defendant's van had expired more than a year earlier, the officer was authorized to impound the van.") citing *Redd*; and see *People v. Hughes*, 202 Cal.App.4th 1473, 1475, n.1 (2012) (citing statute).

It remains undisputed that McCarty's unregistered vehicle was improperly on a public street and subject to impound under Vehicle Code § 22651(o)(1)(A). 1-ER-126. The Court should affirm McCarty's dismissal.

## II.    This Court Should Dismiss All Class Related Issues as Moot for Lack of a Class Representative.

Because Plaintiffs no longer have any financial interest in the class action, they can no longer serve as class representatives and the attempted appeal on behalf of the putative class is moot. The district court dismissed the only other individual plaintiff, McCarty. 1-ER-137. As a result, the Court should dismiss the class related portions of the appeal without further consideration.

After the district court denied class certification, the City made an offer of judgment under Rule 68 to individual plaintiffs Fitzpatrick and Officer on their individual claims, the only remaining claims in the lawsuit. SER-6. The offer included

attorney fees and costs and did not include the potential for any additional recovery or attorney's fees if the class received a settlement or won at trial. SER-7:1-8. Fitzpatrick and Officer accepted the offer, which resolved all their claims in this lawsuit. SER-8; 1-ER-2. When accepting the offer, these plaintiffs attempted to accept the settlement while also overextending their remaining status in this matter – in effect to eat their cake and still have it too. Fitzpatrick and Officer attempted this feat with the following language:

> "Plaintiffs Breonnah Fitzpatrick and Christopher Officer, in their capacities as individual plaintiffs pursuing their respective individual claims and *not* their respective capacities as putative class representatives, accept the defendant City of Los Angeles F.R.Cv.P. 68 offer of $99,999.00, inclusive of attorney fees and costs." SER-8 (original emphasis).

By accepting this settlement offer, Fitzpatrick and Officer eliminated any further interest they had in the class action or this lawsuit because the offer of judgment and settlement agreement did not include the potential for any future financial interest in the litigation. They have now resolved any financial interest they may have had in the claims alleged, including any claim regarding the costs and fees incurred. Since they have no further financial interest in this lawsuit, the Court should dismiss the appeal regarding the putative class issues as moot. Simply stating that one is not resolving the class claims is insufficient to avoid mootness.

This result is compelled by *Brady v. AutoZone Stores, Inc.*, 960 F.3d 1172 (9th Cir. 2020), which dismissed an appeal under nearly identical circumstances. In *Brady*, the plaintiff sued for damages individually and on behalf of a putative class, but after

27

years of litigation the court denied class certification. The parties then settled Brady's individual claims, including any claims to costs or fees. *Id*. at 1173. "The settlement agreement was 'not intended to settle or resolve Brady's Class Claims.' But it did not provide that Brady would be entitled to any financial reward if the unresolved class claims were ultimately successful." *Ibid*. The parties entered a stipulation to that effect, the court entered final judgment, and Brady then appealed on class certification. *Ibid*.

*Brady* explains that a moot action "is one where the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Brady*, 960 F.3d at 1173 (cleaned up). After putative class representatives voluntarily settle their individual claims, the test of whether a subsequent appeal on behalf of the class is moot depends on "whether the class representative retains a personal stake in the case." *Id*.; quoting *Campion v. Old Republic Prot. Co*., 775 F.3d 1144, 1146 (9th Cir. 2014). "The personal stake must be concrete and financial," and that determination "turns on the language of the settlement agreement." *Brady* at 1173 (cleaned up). The *Brady* Court held that since Brady settled his own claims and did not have an agreement to retain a financial interest in any putative class resolution, he "lack[ed] a legally cognizable interest in the outcome" of the class claims, rending those class claims moot." *Brady*, 960 F.3d at 1173; quoting *Nat'l Envt'l Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988). *Brady* made clear that such plaintiffs cannot continue to prosecute a class action case. *Brady* held "that when a class representative voluntarily settles his individual claims, he must do more than expressly leave class claims unresolved to avoid mootness. A class representative

must also retain—as evidenced by an agreement – a financial stake in the outcome of the class claims. Absent such a stake, a class representative's voluntary settlement of individual claims renders class claims moot." *Brady*, 960 F.3d at 1175.

*Campion*, on which *Brady* relied, is also instructive. In that case, after the district court denied plaintiff's motion for class certification and granted defendant's motion for summary judgment, the parties settled and filed a joint motion and stipulation to dismiss. The stipulation to dismiss stated that the plaintiff reserved the right to appeal the order denying class certification. *Campion*, 775 F.3d at 1145. The Court held the plaintiff's reservation of the right to appeal "makes no difference," (*id.* at 1146), because he had no remaining financial interest as a result of the settlement. *Id.* at 1147.

In this case, as in *Brady* and *Campion*, that plaintiffs Fitzpatrick and Officer included superficial language in the settlement that they were not settling their claims as putative class representatives is irrelevant because they entered into a settlement agreement that resolved all their interests in the lawsuit. See *Brady*, 960 F.3d at 1174; *Campion*, 775 F.3d at 11457. The "settlement agreement does not indicate he will receive any additional compensation for the class claims" and that he "settled any claim to attorney's fees." *Brady*, *id*. Because this leaves Fitzpatrick and Officer with no financial interest in this matter, the class related claims are moot. Thus, the Court should dismiss the class related claims without further consideration.

### III. The District Court Properly Denied Plaintiffs' Untimely Class Certification Motion.

The district court set deadlines for pre-trial motions, the last of which expired two weeks before Plaintiffs filed their class certification motion. 1-ER-22. Based primarily on their assertion of entitlement, Plaintiffs insist no deadline existed on their ability to seek class certification. Plaintiffs are wrong, both in light of the district court's orders and the rules of court.

### A. Class certification motions are within the district court's discretion.

This Court reviews the district court's denial of class certification for abuse of discretion. "District courts have broad discretion to control the class certification process." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009); followed by *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 964-65 (9th Cir. 2020). "District courts are in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (cleaned up); citing *Doninger v. Pac. N.W. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977).

Similarly, this Court reviews "a district court's case management decisions for abuse of discretion." *Davidson*, 968 F.3d at 963; citing *GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*, 650 F.3d 1257, 1262 (9th Cir. 2011). This Court "must

affirm unless the decision was 'illogical, implausible, or without support in inferences that may be drawn from facts in the record.'" *Davidson*, at 963; citing *United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009) (en banc).

### B. The district court did not abuse its discretion by denying Plaintiffs' untimely class certification motion.

The district court properly exercised its discretion to deny Plaintiffs' untimely class certification motion. A district court does not abuse its discretion by reasonably governing litigation or by "enforcing filing deadlines; they have the power to establish reasonable times for the filing of documents and to evaluate the legitimacy of an excuse for failing to file on time." *Davidson*, 968 F.3d at 963 (cleaned up). Plaintiffs also failed to comply with the court rules which require a class certification motion at soon as possible. See U.S.Dist.Ct.Rules C.D.Cal. Rule 23-3[3] ("earliest possible time"); Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time"). Plaintiffs have never justified their extended delay in bringing the class certification motion – after three years of litigation – particularly as it appears that they had the support they later relied on nearly two years before filing the motion. See 1-ER-23, 13; and see 2-ER-194:5-195:8, 199, 201.

---

[3] The Court invalidated a previous version of Local Rule 23-3 in *ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018), but the Central District later amended the rule, effective December 1, 2019. See CA R USDCTCD Civ Rule 23-3.

The district court set four deadlines for pretrial motions: (1) amended pleadings and new parties, (2) discovery motions, (3) dispositive motions, and (4) trial motions (at the final pre-trial conference). See 1-ER-20, 44-45. The only reasonable interpretation is that these deadlines, in sequence, addressed: (1) motions related to the pleadings, (2) discovery disputes, (3) motions deciding what parties and claims would go to trial, and (4) motions governing the proceedings at trial. While the district court could have articulated a separate deadline for class certification motions, without a separate deadline it falls, at the very least, into the category of motions that decide which claims and parties will proceed to trial.[4] Another district court reached the same conclusion in, *In re Prime Healthcare ERISA Litig.*, No. 820CV01529JLSJDE, 2023 WL 9319290, at *3 (C.D. Cal. Dec. 28, 2023), which addressed an argument that a class certification motion was untimely when the court had not set a specific deadline for certification motions. The court ruled that the plaintiffs "needed only to file their motion by the 'Last Day to File Motions (Excluding Daubert Motions and all other Motions in Limine).'" *Id.* Those plaintiffs met that deadline, Plaintiffs here did not. 1-ER-22-23.

---

[4] Arguably, the deadline for class certification should have been the earlier deadline to add new parties, but the district court gave Plaintiffs the benefit of the dispositive motion deadline. See 1-ER-22.

32

The efforts of the district courts to control their dockets "will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines." *Davidson*, 968 F.3d at 963. Plaintiffs' assertion that they could file a motion to certify at any time "defies logic" and is "obviously unsound." 1-ER-23. If F Plaintiffs had any doubts about the Scheduling Order, based on their counsel's experience with class actions, then it was their responsibility to seek clarification from the court and not indulge in exploiting a perceived loophole. See *Davis v. Westgate Planet Hollywood Las Vegas, LLC,* No. 2:08-CV-00722-RCJ-PA, 2009 WL 5038508, at *6 (D. Nev. Dec. 15, 2009) ("counsel had a duty to challenge the Order directly or request clarification").

Separate from the orders of the district court, Plaintiffs run afoul of the court rules. To litigate beyond the claims of the individual plaintiffs, a party seeking class certification has the burden of meeting all of the requirements in Federal Rule of Civil Procedure 23 ("Rule 23") "by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022)[5]; and see, *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ("To come within the exception, a party seeking to maintain a class action must affirmatively

---

[5] Cert. denied sub nom. *StarKist Co. v. Olean Wholesale Grocery Coop., Inc*., 143 S. Ct. 424 (2022).

demonstrate his compliance with Rule 23.") (cleaned up). While parties more frequently litigate the class prerequisites in Rule 23(a) (numerosity, commonality, typicality, and adequacy), or the class elements in Rule 23(b) (members treated as a class, predominance of class issues, etc.), that does not excuse the requirement to bring a certification motion at "an early practicable time" pursuant to Rule 23(c). Plaintiffs never argued that they satisfied this requirement. In fact, the record confirms that Plaintiffs' delay was deliberate and presumably tactical. See 2-ER-194:5-195:8, 199, 201 (showing support for the motion was nearly two years old).

Similarly, the district court's Local Rule 23-3 requires resolution of class certification issues "[a]t the earliest possible time after service of a pleading purporting to commence a class action" and requires that "the proponent of the class must file a motion for certification." U.S.Dist.Ct.Rules C.D.Cal., Rule 23-3. "Class-action status must be granted (or denied) early not only to avoid problems with mootness, and provide an opportunity for interlocutory review, see Fed.R.Civ.P. 23(f), but also to clarify who will be bound by the decision." *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 455 (7th Cir. 2007). While "the earliest possible time" depends on the circumstances of each individual case, Plaintiffs fail to show compliance in this case.

Plaintiffs filed their motion to certify three years and nine months after initiating the putative class action. 1-ER-12, 14; and see 2-ER-285, 303. This was

34

apparently nearly two years after Plaintiffs had the facts they intended to use in support of certification. See 2-ER-194:5-195:8, 199, 201. That was also fourteen months after the district court grudgingly granted a stipulation to extend the cut-off dates. 1-ER-43  At that time, the court admonished the parties "to meaningfully advance the litigation in timely fashion," and stated the court's expectation "that the parties would file any interim motions (if they so choose) advancing the litigation sooner rather than later." See 1-ER-42-43, 44. The district court complained that there "has been no meaningful activity in the case" in the previous two months, and warned "that it expects [the parties] to work as efficiently as possible moving forward," and "to file any future [ ] motions in timely fashion." 1-ER-42-43. Ignoring all this, Plaintiffs waited fourteen months after the district court issued the new order, and two weeks after the continued dispositive motion deadline, over a month after the discovery cut-off, and only two months before trial, to file a class certification motion that sought to transform the scope and scale of this lawsuit. 1-ER-20, 23, 44. Even when the City raised the issue of Plaintiffs' untimely certification motion, they offered no explanation for the delay, didn't seek leave to pursue an untimely motion, but stood on their asserted right to bring the motion whenever they chose. See 1-ER-23.

It was not an abuse of discretion for the district court to enforce its own scheduling order and the court rules governing class actions. The Court should affirm.

## IV. Plaintiffs Were Not Entitled to Ignore the Court's Orders and then Demand Relief in a Belated Rule 6(b)(1)(B) Motion.

Plaintiffs also argue that the district court was obligated to accommodate their belated and largely unsupported motion for relief to file an untimely motion for class certification. Under Rule 6(b)(1)(B) a court may "for good cause" extend the time to perform an act after that time has expired upon a showing of "excusable neglect." Half of the opening brief is devoted to Plaintiffs' motion for relief, all asserting the basic premise that their deliberate decision to disregard court orders and court rules by waiting for the eve of trial to seek class certification somehow constitutes "excusable neglect." Plaintiffs are still wrong.

### A. Relief under Rule 6(b)(1)(B) falls within the court's discretion.

"[W]e review a decision under Rule 6(b) for abuse of discretion." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 824 (9th Cir. 1996); and see *Pioneer Inv. Services. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 391, 398 (1993). Any attempt by Plaintiffs to suggest otherwise – such as by claiming, without authority, that the denial of their motion for relief 'violated due process' – is baseless. Thus, the question is not whether a different court might have indulged Plaintiffs' late request, but whether the district court abused its discretion in reaching its decision.

36

This Court recognizes the district court, "had a superior understanding of this case, was in the best position to judge the reasonableness of counsel's" actions. *Reyna v. Comm'r of Soc. Sec.*, 548 Fed.Appx 404 (9th Cir. 2013). In addition, the Court accords "substantial deference" to a lower court's "interpretation of its own orders and will not overturn that interpretation unless we are convinced it amounts to an abuse of discretion." *In re Wallace*, 490 B.R. 898, 906 (B.A.P. 9th Cir. 2013); citing *Hallett v. Morgan*, 296 F.3d 732, 739–40 (9th Cir. 2002) (the trial court's interpretation of its own orders gets special consideration). "[D]eference…is the hallmark of abuse-of-discretion review." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997).

**B. The district court did not abuse its discretion by rejecting Plaintiffs claim of excusable neglect.**

It is beyond dispute that Plaintiffs were in full control of when they moved for class certification. However, they offer no justification or explanation for their untimely motion other than their implicit preference for delay. Plaintiffs' primary arguments boil down to this: (1) counsel successfully brought other class actions against the City and so is entitled to pursue this one; (2) if they had filed a timely certification motion it would have established a class; and (3) it was not reasonable for them to think they had to pursue class certification in a timely manner. None of these arguments support a finding of excusable neglect in failing to file a timely motion for class certification.

Determining excusable neglect under Rule 6(b)(1)(B) is a "somewhat elastic concept" based on an equitable determination by the district court, "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect…" *Pioneer Inv. Serv. Co.* 507 U.S. at 392, 395. To make this determination, courts consider "the danger of prejudice to [the nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. We address each of these in the order considered by the district court.

### 1. Plaintiffs' preference for dilatory tactics caused the delay.

As the district court concluded, Plaintiffs' dilatory tactics and disregard for deadlines, court instructions, and court rules is the sole reason for their untimely class certification motion. Plaintiffs only response is to assert no deadline existed for seeking class certification and to otherwise disregard their pervasive pattern of dilatory tactics. 1-ER-12-13; AOB at 14-15. At best, Plaintiffs' arguments add up to: We couldn't be bothered to bring a timely motion, so the court should allow our late motion.

The district court disregarded Plaintiffs' absurd assertion that no deadline existed as "patently unreasonable," concluding that "no reasonable attorney would conclude that he could file a motion for class certification any time he wished." 1-

38

ER-13.  In addition to the court's deadline, this was particularly true here, given counsel's familiarity with class action litigation, including: (1) the civil procedure rule compelling a class certification motion "[a]t an early practicable time"; (2) the local rule compelling class certification "[a]t the earliest possible time"; and (3) that "he must have understood that motions for class certification generally precede motions for summary judgment and should, in general, be filed well before trial." See Fed. R. Civ. P. 23(c)(1)(A); U.S.Dist.Ct.Rules C.D.Cal., Rule 23-3; and 1-ER-13.  In addition, the district court repeatedly instructed the parties to diligently litigate this matter, and to file all motions "sooner rather than later."  1-ER-13; and *infra* at 15-16.

Misunderstanding court rules is not excusable neglect.  *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 930 (9th Cir. 1994) (reversing district court's finding of excusable neglect and holding that counsel's mistaken understanding of court rules cannot be excusable neglect, citing several supporting cases).  Similarly, misunderstanding a court order does not support excusable neglect.  *In re Veritas Software Corporation Securities Litigation*, 496 F.3d 962, 973 (9th Cir. 2007) ("*Veritas*").  *Veritas* addressed an untimely post-judgment fees motion which under court rules was due 14 days after entry of judgment.  *Id.* at 972.  In the judgment, the trial court reserved continuing jurisdiction to hear fees motions, and counsel interpreted that to mean the court extended the 14-day deadline and so

39

filed his fees motion 15 days thereafter. *Id*. The district court denied the fees motion as untimely, holding counsel could not reasonably interpret the order in that fashion and that no excusable neglect existed under Rule 6(b) for "good faith reliance on his belief." *Id*. at 972-973. This Court affirmed, ruling that whether to consider the untimely motion "is a decision committed to the discretion of the district court." *Id*. at 974.

Plaintiffs had a long history of dilatory tactics in this matter, which continued with the class certification motion itself. See 1-ER-14-15. After the City's opposition to certification raised the untimely status of the motion, Plaintiffs largely ignored the issue, made no attempt to justify their delay in bringing the motion, and did not ask for any relief. 1-ER-12, 23. Then, after the court denied certification, Plaintiffs waited another ten days to seek relief under Rule 6(b), again without excuse. See 1-ER-10. Recognizing that Plaintiffs' repeated delays were inexcusable, the district court said that it would have denied a request to further continue the deadline, even if Plaintiffs had made a timely request, citing *Gonzalez v. Gov't Emps. Ins. Co. Inc.*, 2021 WL 4805199, at *5 (C.D. Cal. Aug. 30, 2021) ("Given Plaintiffs' lack of diligence in seeking class certification, the Court sees no good cause to continue the cutoff date.") 1-ER-23, n.4. The cause for delay firmly supports affirming the judgment.

### 2. Plaintiffs cannot escape the inherent prejudice from their unreasonable delay tactics.

Plaintiffs' decision to belatedly seek class certification, and then to double-down with a motion for relief, during the limited time designated for trial preparations is inherently prejudicial. The district court, which is particularly familiar with the dilatory manner in which Plaintiffs litigated this matter and the City's burden of "complying with myriad deadlines for pretrial filings," found enough prejudice to support denying Plaintiffs' request for relief. 1-ER-14; and see 2-ER-314-315 (listing trial related filings). As part of this analysis, the Court should consider the tactical decision by Plaintiffs to withhold the class certification motion until after the deadline and well into the time assigned for trial preparation. See *infra* at 35-35.

Plaintiffs have two responses: (1) that certification was a foregone conclusion and this excuses any delay in filing the motion, and (2) that they only missed the continued deadline by two weeks, so that should count as nothing. AOB at 18-19. The first argument doubles down on Plaintiffs' position that they are entitled to class certification and therefore can disregard court rules, court orders, and the court's instructions on the requirement to timely seek class certification. See *infra* at 15-16. Of course, no class exists until the district court grants a certification motion, and that did not happen here. Plaintiffs mistakenly

41

cite the policy against dismissal with prejudice in favor of the disposition of cases on their merits. See *Dahl v. City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996). However, no authority presuming a right to class actions exists, since class actions are just a procedural mechanism, and the district court here did not dismiss any claim. The parties voluntarily settled the individual claims here to the satisfaction of all parties. 1-ER-2; SER-11. Furthermore, the district court's denial of Plaintiffs' untimely class certification motion did not alter the rights of any absent potential class member. See 1-ER-14.

The district court specifically rejected the second argument, as noted above. In addition to the needless distraction and unwarranted delay caused by opposing the untimely motions during trial preparations, the late conversion of this matter into a class action would require the redrafting and resubmission of many trial documents already prepared and filed, further prejudicing the City. See 1-ER-14. Such a late transformation would also prejudice the City by needing to reopen discovery to address the putative class members at the same time pretrial documents are due.

"The district court's finding of prejudice deserves substantial deference because the district court is in the best position to assess prejudice." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006) (cleaned up). Plaintiffs provide no basis for rejecting the district court's

42

conclusion that Plaintiffs' actions did prejudice the City and that this factor also favors denying relief. 1-ER-14.

### 3. The lengthy delay would have significantly impacted the judicial proceedings.

The district court properly found that the lengthy delay also favored denying relief for Plaintiffs' untimely motion. The district court focused on three related elements. First, the inexcusable delay in seeking class certification despite nearly three years of litigation. 1-ER-14. Second, Plaintiffs' delay in seeking relief under Rule 6(B). Even when the City raised the untimely nature of the certification motion in its opposition, Plaintiffs "did not invoke Rule 6(b), present any argument concerning excusable neglect, or request relief from the Court." 1-ER-12. Instead, Plaintiffs waited for over a week after the district court denied their class certification motion to seek relief. As a result, Plaintiffs first invoked Rule 6(b)(1)(B) for relief more than six weeks after the deadline to file the certification motion. See 1-ER-44, 2-ER-314. Third, the court considered the potential effects of the untimely motion. 1-ER-14. The Court should consider these points in the context of Plaintiffs' longstanding dilatory tactics in this litigation and their disregard for court rules, orders, and instructions. *Infra* at 33-35, 40.

In consideration of these factors, the district court here reached the same conclusion as a sister court: "Having considered Plaintiff's lack of diligence and

the resulting waste of the Court's resources, the Court finds that further delay in this action would be contrary to the interest of judicial economy and the principle of judicial efficiency." *Robertson v. FedEx Nat. Ltl, Inc.*, 2010 WL 10020690, at *4 (C.D. Cal. ]an. 5, 2010). "The trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest." *United Constr. Prods., Inc. v. Tile Tech, Inc.*, 843 F.3d 1363, 1369 (Fed. Cir. 2016) (cleaned up); and see *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) ("It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants such as [Petitioner].").

Plaintiffs first respond by asserting that a trial of the remaining individual claims would be easy. Even if previously true, this was irrelevant to belatedly adding a class of over 5,000 people on the eve of trial. See 1-ER-194; 2-ER-194:20. It is even more irrelevant now that those individuals have settled all of their interests in this litigation. *Infra* at 26-29. Plaintiffs simply ignore the inevitable burden of identifying and contacting the potential class members, determining their specific circumstances and whether that removes them from the proposed class, in addition to determining their individual claims for damages. The entire nature of the trial would inevitably change, requiring significantly different trial preparations, new rounds of discovery after the existing cut-off, and further delay. This is why the court rules and the district court's instructions all

44

compelled a timely certification motion, not a last-minute tactical ploy by Plaintiffs. 1-ER-12-13, 14; *infra* at 32-34.

Plaintiffs then argue on behalf of the putative class members. However, they have never been a part of this lawsuit, are not represented by present counsel, and their status and the potential for any legal claims on their behalf is not changed by the rulings at issue, as the district court expressly acknowledged. 1-ER-14 (under "Prejudice").

Importantly, the established deadline was never considered the optimum time to file, but was the very last day the court would consider the motion after nearly three years of litigation. See 1-ER-23. The district court already, reluctantly, gave extensions on the deadlines and warned the parties "to meaningfully advance the litigation in timely fashion." 1-ER-11. Nevertheless, Plaintiffs continued with a pattern of delays and missed deadlines, culminating in the untimely certification motion and the request for relief. The district court reasonably concluded that the motion for relief "is simply too little, too late." 1-ER-12.

### 4. Even if not outright bad faith, Plaintiffs' "indolent and disinterested" tactics do not support granting relief.

Given Plaintiffs' persistent dilatory tactics, and disregard for court rules and orders, they cannot establish a showing of good faith that could potentially support

45

relief.  Even giving Plaintiffs the benefit of the doubt, absent an express declaration of bad faith, the district court still found this element did not favor granting or denying relief.

In response, Plaintiffs double down on their argument that absent a specific deadline for class certification, they reasonably believed that no deadline existed for a major motion that could fundamentally change the scope and complexity of the litigation.  AOB at 25-26.  The district court properly "dismissed Plaintiffs' argument outright," finding that Plaintiffs' asserted explanation for their untimely class certification motion "defies logic," was "patently unreasonable," and was "obviously unsound."  1-ER-12.  Plaintiffs offered no other defense, but for their apparent preference to wait for the eve of trial, well after the discovery cut-off passed, to seek a wholesale expansion of the scope and stakes of the lawsuit. "Even viewing these facts in the best light for Plaintiffs, the Court must conclude that their counsel is indolent and disinterested in litigating this matter zealously" See 1-ER-15.

Plaintiffs' reliance on *Pryor v. Aerotek Sci., LLC*, 278 F.R.D. 516, 520 (C.D. Cal. 2011) does not help them because that decision is readily distinguishable.  In *Pryor*, the plaintiff electronically filed a class certification motion on the correct day, but mistakenly believed that the General Order applied, setting a midnight deadline, when the assigned judge set a deadline at 5:00 p.m.  *Id*. at 521.  That

court applied the *Pioneer* elements and granted relief for the late filing, but that holding is distinguishable as to each element. First, the court found the reason for the delay was a "simple, faultless omission" by relying on the General Order and not being aware of the judge-specific order. *Id*. at 522. This is in stark contrast with Plaintiffs who claimed a "patently unreasonable" belief that "defies logic," that no deadline existed whatsoever and filed their motion two weeks after the deadline passed, instead of a few hours late. 1-ER-12-13, 23.

Second, the delay of a few hours, existing entirely after business hours on the same day, created no potential prejudice and it appears that the district court had not even set a trial date. *Pryor*, 278 F.R.D. at 521. Significantly, in this case Plaintiffs filed their motion two weeks late, significantly infringing on the limited time designated for the City to comply "with myriad deadlines for pretrial filings." 1-ER-14. In fact, the proposed hearing date for the certification motion was only four weeks before the Final Pretrial Conference, the same time that the City was preparing trial documents. 1-ER-45; 2-ER-192, 314. Third, a few hours delay in the evening did not delay or have any impact on the proceedings in *Pryor*, which still lacked a trial date. *Id*. at 522. In stark contrast, Plaintiffs' initial two-week delay, led to a further delay for the motion for relief, and potentially threated to reframe the entire lawsuit on the eve of trial and after most preparations for trial. 1-ER-14.

Finally, the plaintiff in *Pryor* was clearly trying to meet the perceived deadline, and no evidence suggested any pattern of dilatory tactics or a disregard for advancing the litigation in a timely manner – i.e., no evidence of bad faith or questionable motives. *Pryor*, 278 F.R.D. at 522. The facts here are more egregious. Plaintiffs' dismissive attitude is consistent with how they litigated this lawsuit throughout. Plaintiffs do not deny "a broader pattern of delay," missed deadlines, and failure to "engage in other pretrial obligations," including the local rule requirement to meet and confer before bringing their motion for relief. 1-ER-14-15, including n.2; and see SER-20-21, ¶¶2-6, 21-22, ¶ 7. This larger context indicates that Plaintiffs' disregard for bringing a timely class certification motion was not a negligent one-off, but was the predictable, and presumably intentional, extension of a pervasive dilatory litigation strategy. This element does not support disregarding the district court's decision to deny Plaintiffs relief.

## C. *Pioneer* does not support Plaintiffs.

Plaintiffs' reliance on *Pioneer Investment* in applying these elements is misplaced. In *Pioneer Investment*, the party seeking relief missed a bankruptcy filing deadline by 20 days . The *Pioneer Investment* Court held that excusable neglect is not limited to circumstances beyond the control of the party seeking relief. *Pioneer Investment*, 507 U.S. at 387-388, including n.3, and 392. *Pioneer Investment* also reversed the circuit decision regarding party culpability, holding

instead that a party "must be held accountable for the acts and omissions of their attorneys." *Id*. at 396-397.

Other than these legal corrections, the Supreme Court accepted the factual and discretionary determinations of the lower courts, including the good faith of the party seeking relief and the absence of any prejudice to the opposing party or judicial administration. *Id*. at 397-398. Pointedly, the district court here made opposite findings regarding Plaintiffs' request. 1-ER-13-15 and see, 22-23; and *infra* at 41-48. *Pioneer Investment*'s primary consideration for excusable neglect was that the subject deadline was normally "prominently announced" by the court. But in that case the "peculiar and inconspicuous placement of the bar date in a notice regarding a creditors' meeting, without any indication of the significance of the bar date, left a dramatic ambiguity in the notification." *Id*. at 398 (cleaned up). In stark contrast, the district court here prominently issued pre-trial deadlines and repeatedly instructed the parties "to meaningfully advance the litigation in timely fashion," stating the court's expectation "that the parties would file any interim motions (if they so choose) advancing the litigation sooner rather than later." See 1-ER-42-43, 44; and see *infra* at 33-34 (regarding controlling court rules).

Plaintiffs' real complaint is that his deliberate strategy of dilatory tactics and disregard for deadlines and the court's instructions did not work. That is not grounds for relief or excusable neglect.

49

### Conclusion to Appeal

The district court properly dismissed McCarty for failing to allege a viable claim because the City impounded his vehicle for lacking registration on a public street, in violation of Vehicle Code §§ 4000(a)(2) and 22651(o)(1)(A)(i).

The Court should summarily dismiss the class issues on appeal as moot for lack of any adequate class representative. Even if the Court did consider the arguments raised in the opening brief, the district court was within its discretion to deny both Plaintiffs' untimely class certification motion and their untimely and baseless motion for relief.

This Court should affirm the Judgment.

# Cross-Appellant's Brief

If the Court affirms the Judgment in full, then the Cross-Appeal is moot. However, if the Court remands the case for further proceedings, then the Court should reverse the erroneous rulings addressed below to prevent incorrect law of the case from governing any future litigation.

**Issues Presented**

1. Does the community caretaking doctrine allow the City to impound vehicles that are illegally parked?

2. Did the Fourth Amended Complaint allege a viable claim for violation of procedural due process?

3. Did the district court erroneously use a strict scrutiny review for an equal protection claim based on ability to pay?

**Summary of Argument**

A vehicle that is illegally parked is subject to impound under the community care doctrine. The district court erroneously added an additional burden on the City to prove that the illegally parked vehicle was an immediate threat to community safety or traffic management. This creates an improper case-by-case judicial review of all established traffic laws, which are already drafted based on a legislative decision that such vehicles impair the public safety and traffic management.

The district court erred in denying the City's Rule 12(b) motions to dismiss the procedural due process claim. The City provided repeated pre-impound notice. Plaintiffs failed to engage in either the pre- or post-impound process provided and

so lack standing to challenge the adequacy of that process. In addition, the

statutory provisions provide adequate notice and pre- and post-impound process.

In ruling on Plaintiffs' equal protection claim, based on the alleged inability

to pay, the district court erroneously reviewed the claim on a strict scrutiny basis.

The proper standard of review is rational basis.

Since these are all legal questions, review on appeal is de novo. *California

First Amendment Coalition v. Calderon*, 150 F3d 976, 980 (9th Cir. 1998).

## Legal Argument

### I. The Community Caretaking Doctrine Authorizes the Impound of an Illegally Parked Vehicle.

Because Fitzpatrick illegally parked her vehicle in a red zone, the City could

impound it under the community care doctrine. See 1-ER-34. Nevertheless, the

district court erroneously granted summary judgment for Fitzpatrick regarding the

initial seizure of her vehicle by improperly imposing an additional burden on the

City to prove that the illegally parked vehicle posed an immediate threat to public

safety or traffic – i.e, a burden to justify the existing traffic ordinance being

enforced. This improper exception would allow courts to judge the propriety of

properly enacted parking restrictions on a case-by-case basis. 1-ER-34. This

holding is legally incorrect.

The enactment of traffic and parking laws is an inherently legislative act that a court should not second guess.

> "Proper management of the flow of vehicular traffic within a city requires the accommodation of a variety of conflicting interests: the motorist's interest in unhindered access to his destination, the city's interest in the efficient provision of municipal services, the commercial interest in adequate parking, the residents' interest in relative quiet, and the pedestrians' interest in safety. Local governments necessarily exercise wide discretion in making the policy decisions that accommodate these interests." *City of Memphis v. Greene*, 451 U.S. 100, 126 (1981).

Thus, the legislative body enacts the traffic and parking restrictions that it concludes will best protect public safety and the flow of traffic. One function of law enforcement is to remove vehicles that violate those restrictions under the community caretaking doctrine. In *South Dakota v. Opperman*, 428 U.S. 364 (1976) the Supreme Court confirmed that an "illegally parked" vehicle was "subject to impoundment." *Id*. at 375. "Police will…frequently remove and impound automobiles which violate parking ordinances *and which thereby* jeopardize both the public safety and the efficient movement of vehicular traffic." *Id*. at 368-369 (italics added). In support, the Supreme Court favorably noted that in New York City alone 108,332 cars had been towed away for traffic violations in

1969. *Id* at 369, n.3; citing *People v. Sullivan*, 29 N.Y.2d 69, 71, 323 N.Y.S.2d 945, 946, 272 N.E.2d 464, 465 (1971) (authorizing impound for illegal parking).

The courts recognize and follow this application of the community care doctrine. See *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) (impound would have been proper if the vehicle "was parked illegally, posed a safety hazard, or was vulnerable to vandalism or theft."); *United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008) (same); and see *Goichman v. Rheuban Motors, Inc*., 682 F.2d 1320, 1324 (9th Cir. 1982) (Recognizing "the government's interest in efficient and inexpensive towage of illegally parked automobiles"); and *Stypmann v. City & Cnty. of San Francisco*, 557 F.2d 1338, 1343 (9th Cir. 1977) ("The public interest in removing vehicles from streets and highways in the circumstances specified in the traffic code is…substantial").

The district courts widely enforce this application of the community caretaking doctrine. "Under the community caretaking exception, officers may 'remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic.'" *Prado v. City of Berkeley*, No. 23-CV-04537-EMC, 2024 WL 3697037, at *15 (N.D. Cal. Aug. 6, 2024); quoting *Opperman*, 428 U.S. at 369; *Gombert v. Lynch*, 541 F. Supp. 2d 492, 498 (D. Conn. 2008) ("For example, it is beyond challenge that the police may impound a vehicle that is parked illegally or

otherwise impeding traffic or threatening public safety and convenience." (cleaned up, relying on *Opperman*); *United States v. Skinner*, 957 F. Supp. 228, 233 (M.D. Ga. 1997) ("A car may be impounded if it is illegally parked or if it poses a safety risk."); *United States v. LaFountain*, 252 F. Supp. 2d 883, 888 (D.N.D. 2003) (Citing *Opperman*: "the Supreme Court held that the Fourth Amendment is not violated when police impound and conduct an inventory search of an illegally parked vehicle"); *Rosemont Taxicab Co. v. Philadelphia Parking Auth*., 327 F. Supp. 3d 803, 819 (E.D. Pa. 2018) ("Examples of [the community caretaking function warrant exception] include removing vehicles that are illegally parked…")

Once the district court found that the vehicle was parked illegally, the district court should have ruled that the community caretaking doctrine automatically applied to allow the City to remove the offending vehicle.  The Court should reverse the district court's order granting summary judgment on this issue.

## II.     Plaintiffs Failed to Allege a Viable Claim for Procedural Due Process.

The procedural due process claim alleging both a pre-impound and post-impound lack of due process, that Plaintiffs added in the Fourth Amended Complaint, fails as a matter of law.  See 2-ER-242 and 247-248, ¶¶ 16-18 (Fitzpatrick), 248, ¶ 21 (Officer), and 257-258, ¶ 60 (generally).  First, Plaintiffs

lack standing because they failed to use any of the pre- or post-impound process provided. Second, this claim fails because Plaintiffs and the district court mischaracterized the statutory process. See Veh. Code §§ 40215, 40239 (pre-impound), 22852, 22650 (post impound). Following each of the multiple delinquent parking citations, the City provides notice of a possible vehicle impound and a pre-impound hearing with the potential of preventing impound. See Veh. Code §§ 40215, 40239. Vehicle Code § 22651(i) authorizes impound with at least five delinquent parking citations. The City also provides a post-impound hearing. Veh. Code §§ 22852, 22650. The district court should have dismissed this claim.

## A. The Court reviews the validity of this claim de novo.

Because the City challenged the procedural due process claim on the pleadings, the court accepts as true all well-pleaded allegations of material fact, construing them in the light most favorable to the plaintiff. *Hyde v. City of Willcox*, 23 F.4th 863, 869 (9th Cir. 2022). Conclusory allegations are not "well-pleaded" and not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Similarly, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 US 544, 555 (2007). To state a viable claim, a complaint must allege facts that plausibly establish liability; allegations of facts "merely consistent" with liability

56

are insufficient. *Iqbal*, 556 U.S. at 678.  A party does not have standing if she raises only a "generalized grievance."  *Gill v. Whitford*, 584 U.S. 48, 68 (2018).

"The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1082 (9th Cir. 2010).  The Due Process Clause does not always require a full evidentiary hearing or formal hearing.  *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017).  Accordingly, while there generally "are no 'hard and fast' rules for determining the requisite timing and adequacy of pre- and post-deprivation procedures," courts apply a three-part balancing test established in *Matthews v. Eldridge*, 424 U.S. 319 (1979).  *Yagman,* 852 F.3d at 864.  The three factors under that test are (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements.  *Id*., citing *Matthews*, at 334-335.

### B. Plaintiffs lack standing to challenge a process they never engaged.

Plaintiffs' procedural due process claim fails as a matter of law because they lack standing to raise this claim because they do not allege that they attempted to use that process, either pre-impound or post-impound.  To bring a claim in federal

court, a plaintiff must establish standing to bring such a claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To do so, a plaintiff must allege sufficient facts to show (1) plaintiff suffered an injury in fact; (2) a causal connection between the injury and conduct complained of; and (3) a likelihood that a favorable decision will redress the injury. *Id*. at 560-61. However, plaintiffs have "not been deprived of procedural due process until they have exhausted their administrative remedies, because only then can we determine whether [they] were deprived of adequate process." *Kildare v. Saenz*, 325 F.3d 1078, 1086 (9th Cir. 2003). The details of the due process provided is described below. *Infra* at 63-64 (pre-impound) and 65-66 (post-impound).

"[A] long line of cases…hold that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit." *Madsen v. Boise State Univ*., 976 F.2d 1219, 1220 (9th Cir. 1992) (per curiam) (citing numerous cases); *Friery v. Los Angeles Unified Sch. Dist*., 448 F.3d 1146, 1149 (9th Cir. 2006) (This "is a long-established rule."); and see *Kaufman v. City of S.F*., 434 Fed.Appx. 583, 585 (9th Cir. 2011) ("Because Kaufman did not request an in-person hearing [after his vehicle was towed], he lacks standing to challenge the sufficiency or timing of the hearings under state or federal law.").

Among other things, requiring a plaintiff to engage in the available process "establishes the existence of a well-defined controversy between the parties." *Madsen*, 976 F.2d at 1221. In *Madsen*, the plaintiff wanted a free handicap parking permit. He made several inquiries to various university officials, including the Parking Services Office and the Vice-President's Office, who told him that no permits were available. He filed a claim, and later a lawsuit for discrimination. *Id*. Following the claim, the university provided a parking accommodation that would benefit Madsen, but he still proceeded with his claim. *Id*. This Court affirmed the dismissal of Madsen's claim on the grounds that he "never actually applied for a handicap parking permit." *Id*.; contrast with *Platt v. Moore*, 15 F.4th 895, 906 (9th Cir. 2021) (plaintiffs had standing to challenge the process because they filed a claim to invoke the process).

Plaintiffs do not allege they attempted to invoke any pre-impound process. Post-impound, similar to *Madsen*, Plaintiffs allege that they unsuccessfully asked for their vehicle's return from some undesignated City employees, without using the process intended to respond to this request. 2-ER-247-248, ¶ 18 (Fitzpatrick), 248-249, ¶22 (Officer), and 257-258, ¶ 60 (generally). Plaintiffs do not allege that the individuals they spoke to had the authority to release the vehicle. By failing to use the established process for returning the vehicle, Plaintiffs denied any reviewing court of the record of those proceedings and a formal response. See

*Madsen*, 976 F.2d at 1221. This leaves only Plaintiffs' self-serving speculation that the City's procedures and/or response would be inadequate. This concerned the district court, who granted leave to amend so they could add an individual plaintiff who did use the process provided. See 1-ER-61, n.3.[6]

Plaintiffs refuse to acknowledge the pre-impound process as relevant, and so do not even claim futility there. See 1-ER-59. Plaintiffs tacitly concede that they cannot plead a request for a post-impound hearing by arguing that this claim "falls within that small class of cases where a formal application is unnecessary on the ground of futility." *Madsen*, 976 F.2d at 1222. The circumstances do not support the futility claim for the post-impound hearing for at least two reasons.

First, the cases Plaintiffs rely on are distinguishable because they do not address a due process claim, but rather are direct challenges to the validity of a statute or ordinance which barred that plaintiff's desired activity. See 1-ER-60; e.g., *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) (ordinance expressly barred plaintiff's desired billboard); and *Dragovich v. United States Department of the Treasury*, 764 F.Supp.2d 1178, 1185 (N.D. Cal. 2011) (no need to submit an application when the deciding agency clearly stated that it would reject applications challenging the Defense of Marriage

---

[6] Plaintiffs did not act on this.

Act).  A holding that it is futile to ask a government official to violate existing law does not support Plaintiffs because the statutes here do not compel a predetermined outcome.

Second, the outcome of the hearing is not inevitable under the statutory hearing process.  See Veh. Code §§ 22650, 22852.  For example, under § 22852(e) the hearing officer can find "that reasonable grounds for the storage are not established."  Pursuant to the statutes, an impound "based on community caretaking, is only reasonable if the removal is necessary to achieve the community caretaking need."  Veh. Code § 22650.  The hearing officer has the power to determine, among other things, whether that specific impound satisfies the community caretaking doctrine.  Given the wide variety of specific circumstances under which the City might impound a vehicle, nothing in the governing statutes indicates that the outcome of each storage hearing is predetermined.  Because Plaintiffs failed to establish futility, they lack standing and the Court should dismiss the procedural due process claim.

## C. Plaintiffs' procedural due process claim fails because the City has adequate pre- and post-impound procedures in place.

Plaintiffs' procedural due process claim regarding impounds under Vehicle Code § 22651(i), for having five or more delinquent parking citations, fails because: (1) the City provides ample pre-impound process, both by providing

notice that unpaid parking citations may result in a bar on vehicle registration and in vehicle impound, and in the process provided to challenge the parking citations and demonstrate an inability to pay; and (2) the City also provides an adequate post-impound process to challenge the impound.

### 1. Vehicle owners have both pre-impound notice and an opportunity to be heard.

The City provides vehicle owners with adequate process before it impounds any vehicle under Vehicle Code § 22651(i) and owners have ample opportunity to prevent an impound. The City gives repeated notice for each citation that a vehicle impound and a vehicle registration hold can result from unpaid parking citations and also instructs how to initiate the procedure to challenge and resolve parking citations. See SER-58.

Notice is not an issue in this case. As the district court acknowledged, Plaintiffs abandoned their claim that the City failed to give notice about a potential vehicle impound and a Department of Motor Vehicles vehicle registration hold, thus they waived the issue. 1-ER-63. Presumably, Plaintiffs recognized that each Notice of Delinquent Parking Citation from the City warns the owner about a DMV registration hold and that: "The City may also subject your vehicle to immobilization (booting) or impoundment (CVC 22651.7, 22651(i)), or a civil judgment (CVC 40220)." 1-SER-38. About two months later, the City follows

with a letter again warning of the registration hold, "increased penalties," and assignment to a collection agency. 1-SER-38, 39. The City then sends a final notice of delinquency, about one month later. 1-SER-41, 42. Since Vehicle Code § 22651(i) requires the accumulation of at least five unpaid parking citations, each driver received five notices before any impound. In Officer's case, he had 17 unpaid citations. 1-ER-30.

The City also provides adequate process for owners to challenge or otherwise resolve parking citations prior to impound. The district court mistakenly disregarded this process as "a red herring," on the basis that Plaintiffs did not challenge the validity of the parking citations, only the vehicle impound. 1-ER-59. That narrow view ignores the fact that vehicle impounds under Vehicle Code § 22651(i) require the accumulation of five unpaid parking citations. Because the impound is the end result of a process that begins with the parking citations, the process provided to prevent the accumulation of five unpaid parking citations, and thus prevent an impound, is necessarily a relevant pre-impound proceeding. The owner had notice of a potential impound and a process to prevent it.

A person may initially challenge the validity of a parking citation with the issuing agency. Veh. Code § 40215(a). If the person is dissatisfied with that review, the driver can request an administrative hearing conducted by a qualified examiner who "shall provide an independent, objective, fair, and impartial review

63

of contested parking violations." Veh. Code § 40215(b), (c)(3). A deposit in the amount of the parking penalty is normally required, but the government agency can waive this upon a showing of indigency. Veh. Code §§ 40215(b), 40220. In addition, either the examiner or issuing agency has the discretion to allow the person to pay a parking penalty in installments or to defer payment due to "an inability to pay the parking penalty in full." Veh. Code § 40215(c)(7). Following the hearing, if the hearing officer does not discharge the citation, the examiner must provide a written reason for the ruling. Veh. Code § 40215(b). If a driver is dissatisfied with the results of this hearing, the driver may challenge the parking citation in superior court, which will conduct de novo review. Veh. Code § 40230.

The Courts have repeatedly held that this hearing procedure comports with due process requirements. *Yagman*, 852 F.3d at 863-66 (process for challenging issuance of parking citation provides adequate initial check against mistaken decisions); *Love v. City of Monterey*, 37 Cal. App. 4th 562, 586 (1995) ("[T]he statutory scheme for contesting parking tickets does not violate due process requirements."); *Yagman v. Garcetti*, No. 2014 WL 3687279, at *2 (C.D. Cal. July 9, 2014), aff'd, 852 F.3d 859 (9th Cir. 2017) ("[C]ourts universally agree that the California procedure for contesting parking tickets comports with due process."). This process is available to a driver five times before the driver's vehicle is eligible

for impound under Vehicle Code § 22651(i). Thus, a vehicle owner has both notice and a significant opportunity to be heard before any impound occurs.

### 2. Vehicle owners also have adequate post-impound procedures.

In addition to all of the notice and procedures described above, the owner of a vehicle impounded under Vehicle Code § 22651(i) has additional due process protections post-impound under § 22852. A vehicle owner can request a post-impound hearing, which "shall be conducted within 48 hours of the request" and "the storing agency shall have the burden of establishing the authority for, and the validity of, the removal." Veh. Code § 22650(c). The public agency can designate a hearing officer, but the hearing officer cannot be the same person who directed the storage. Veh. Code § 22852(c). The hearing officer can find "that reasonable grounds for the storage are not established." *Id*. at (e). Under this statutory scheme, an impound "based on community caretaking, is only reasonable if the removal is necessary to achieve the community caretaking need." Veh. Code § 22650. Further, a review of the validity of an impound under § 22852 "does not prevent a review or other action as may be permitted by the laws of this state by a court of competent jurisdiction." Veh. Code § 22650(d). Thus, judicial review of this administrative hearing is available through a writ of mandate under Code of Civil Procedure § 1095.

The Ninth Circuit has upheld the due process sufficiency of a hearing under Vehicle Code § 22852. *Mills v. Menchaca*, 878 F.2d 386 (9th Cir. 1989) ("We have previously held that the provisions of section 22852 satisfy the demands of due process.") For example, *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1324 (9th Cir. 1982) held that § 22852 satisfied due process both with regard to providing notice of the impound within 48-hours (under subdivision (b)) and the 48-hour wait for a post-seizure hearing (under subdivision (c)). *Id*. at 1324-1325. Similarly, the government agency's selection of the hearing office comports with due process. *Jordan v. City of Lake Oswego*, 734 F.2d 1374, 1376, n.1 (9th Cir. 1984 ("There is no constitutional requirement that the decisionmaker be an uninvolved person when a property interest protected by due process is at stake."); see also *David v. City of L.A.*, 307 F.3d 1143, 1147 (9th Cir. 2002) (denying plaintiff's claim that the "mere fact that the hearing examiner was employed by the agency-or the City-was sufficient to show a due process violation because the officer who ordered the towing and storage worked for the agency also"), rev'd on other grounds, 538 U.S. 715 (2003). This Court also confirmed that due process does not require judicial involvement as part of the hearing process. *Conner v. City of Santa Ana*, 897 F.2d 1487, 1493 (9th Cir. 1990) (also pointing out that judicial review was available under Code of Civ. Proc. § 1094.5); see also *Hupp v.*

66

*City of Walnut Creek*, 389 F.Supp. 2d 1229, 1233-34 (N.D. Cal. 2005) (Section 22852 comports with due process).

Plaintiffs' argument that any post-impound review must consider a claimed inability to pay the delinquent parking citations is misguided for at least two reasons. First, the pre-impound process considers and addresses the inability to pay. *Infra* at 63-64. Plaintiffs cannot complain that they chose to ignore the available pre-impound process. Second, this Court already held that procedural due process under the United States Constitution does not require an agency "to consider her inability to pay her traffic debt" when enforcing traffic laws. *Mendoza v. Strickler*, 51 F.4th 346, 361 (9th Cir. 2022) ("The procedural aspects of the Due Process Clause do not require that the State afford a process for evaluating a factor that, under the applicable substantive law, is not relevant to the ultimate decision at issue.") The district court's attempt to distinguish *Mendoza* on the grounds that it is specific to Oregon law ignores the plain language of the decision, which is based on constitutional due process requirements. *Id*. at 360-361; and see 1-ER-66-67.

The district court attempted to distinguish those authorities under the theory that they did not consider the possible forfeiture of the impound vehicle. 1-ER-64. However, the potential loss and sale of an impounded vehicle to cover towing and storage costs is always a possibility if the owner does not cover those

administrative costs, so that possibility is inherent for all impound vehicles. See

*Mann v. State of California*, 106 Cal. App. 5th 941, 949 (2024), review denied

(Nov. 20, 2024) ("While failure to pay impound fees may result in the loss of the

vehicle through a lien sale, this is a civil consequence directly related to the

services provided…"). The towing and storage charges are an administrative

charge for the impound and storage of the vehicle, payable regardless of the basis

for the impound. Veh. Code § 22850.5. Nothing in the law equates a vehicle

impound with a forfeiture, particularly because someone can recover an

impounded vehicle once they clear the unpaid parking citations. Veh. Code

§ 22651(i)(1)(C); and see § 14607.6 (describing how an impounded vehicle might

later become subject to forfeiture).

### D. Consideration of the *Matthews* elements confirms the failure of Plaintiffs' procedural due process claim.

A review of the *Matthews* elements confirms the adequacy of the due

process provided to Plaintiffs. *Mathews* explains that "[d]ue process is flexible and

calls for such procedural protections as the particular situation demands." 424 U.S.

at 334 (cleaned up). To make that determination, we look to the "governmental

and private interests that are affected." *Id.*

The first factor is the private interest the impound affects. "The private

interests here are financial and personal convenience: the availability of personal

transportation, and the cost of fees, towing and storage required to redeem one's vehicle after the impound." *Alviso v. Sonoma Cnty. Sheriff's Dep't*, 186 Cal.App.4th 198, 211 (2010). While the temporary loss of personal transportation can be substantial, as the district court found, the Court must take the loss here in perspective. See 1-ER-69. First, to a significant degree this loss is self-inflicted. Plaintiffs received repeated notices about the potential for impound and had a pre-impound process available that would specifically consider their ability to pay which they never invoked. *Infra* at 62-64. Plaintiffs effectively complain about the consequences of their own decision to let the parking citations pile up without taking any action to address them. Second, Plaintiffs' decision to ignore the multiple parking citations also led to the expiration of their vehicle's registration, so the law prohibited them from operating their vehicles on a public street in any case. See 1-ER-131. See Veh. Code § 4000; and *Alviso*, 186 Cal. App. 4th at 212 (because plaintiff could not lawfully operate vehicle, private interest affected was solely the monetary cost of impoundment). Finally, driving is not a fundamental right, *Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999), and other means of transportation, such as public transportation, exist.

The second *Matthews* factor, the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards, also favors the City. First, the risk of erroneous deprivation is low because the owner gets at least

five sets of notices about the potential for impound before § 22651(i) authorizes an impound. See *infra* at 62-63. Second, the elaborate pre-impound process provides multiple opportunities to address the validity of the parking citations and the ability to pay the resulting fees. This process would have allowed Plaintiffs to clear the citations, which would allow them to renew their vehicle registration and avoid an impound. Similarly, the requirement to send notice of the impound within forty-eight hours ensures that "erroneous deprivation of an owner's vehicle will be slight, and satisfies due process concerns." *Miranda v. City of Cornelius*, 429 F.3d 858, 868 (9th Cir.2005) (cleaned up). Further, as discussed above, the procedural safeguards allow ample opportunity to prevent any impound or to address the propriety of the impound. *Infra* at 62-64. Plaintiffs do not allege that the City failed to follow any of these pre-impound notice requirements or procedures.

The district court erred by making an opposite finding on this element because the district court erroneously ignored or dismissed the substantial pre-impound protections, including consideration of the ability to pay. *Infra* at 63-64; see 1-ER-59-60, 69-70. The district court also erroneously found that "it appears" the owner has the burden to address whether "reasonable grounds" exist for the impound, citing outdated cases, when "the storing agency shall have the burden of establishing the authority for, and the validity of, the removal." Vehicle Code § 22650(c); and see 1-ER-70. The district court then asserted without support that

a hearing officer might find no reasonable grounds for the impound, have the agency assume all costs for towing and storage, but still (for some unexplained reason) keep the vehicle. 1-ER-70. On a similarly speculative note, the district court worried, again without support, that a hearing officer might conduct a secret hearing, hiding all of the evidence considered as well as the basis for any decision, even though Plaintiffs never alleged such activities. 1-ER-70.

Finally, the district court erroneously assumed the hearing officer's malfeasance, insofar as the impounding agency also employs the hearing officer. 1-ER-71-73. However, this Court already held that a government agency satisfies due process even if the same agency that impounded the vehicle also employs the hearing officer. See *Jordan*, 734 F.2d at 1376, n.1; *David,* 307 F.3d at 1147. Government agency hearing officers are entitled to a presumption they are unbiased. See *Schweiker v. McClure*, 456 U.S. 188, 195-196 (1982); *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The district court incorrectly equated a vehicle impound under § 22651(i) for having five unpaid parking violations with a forfeiture and by citing conflict-of-interest cases from other contexts that do not apply. 1-ER-64-65. While an owner would lose all property rights through forfeiture, after an § 22651(i) impound the owner still owns and can retrieve their vehicle by providing evidence that the owner cleared the unpaid parking citations. Veh. Code § 22651(i)(1)(C).

71

The third *Matthews* element addresses the substantial government interest in enforcing its traffic and parking laws. See *Mendoza*, 51 F.4th at 359 (the state has an interest in compliance with traffic laws and ensuring that drivers do not avoid legal consequences for traffic offenses); *Yagman*, 852 F.3d at 866 ("The City has an interest in promptly collecting parking penalties."). "Parking and traffic management . . . reflects a substantial and compelling administrative objective." *Verdun v. City of San Diego*, 51 F.4th 1033, 1043 (9th Cir. 2022) (cleaned up); and see *Pimentel v. City of L.A.*, 974 F.3d 917, 924 (9th Cir. 2020) ("Here, there is no real dispute that the City is harmed because overstaying parking meters leads to increased congestion and impedes traffic flow."). While catching transgressors "is an important task of law enforcement, an equally if not more important function is crime prevention and deterrence of would-be" violators. *Terry v. Ohio*, 392 U.S. 1, 35, n.1 (1968).

Additionally, the City "has an interest in providing prompt and efficient hearings before the impounding agency, where the records necessary to show whether the vehicle was properly impounded are presumably maintained and accessible." *Alviso*, 186 Cal.App.4th at 214; see also *Yagman*, 852 F.3d at 866 ("[T]he City has an interest in conserving 'scarce administrative resources.'").

Relevant to Fitzpatrick, the government also has an interest in preventing unregistered vehicles from driving on public roads. See *infra* at 22-23; and

72

Vehicle Code § 4000. While the City impounded Fitzpatrick's vehicle for being parked illegally, the vehicle registration had lapsed. 1-ER-104. In that condition, no one could legally drive the vehicle on a public road. Veh. Code § 4000(a)(1); *infra* at 23-25. As a result, the City had a strong interest in continuing the vehicle impound until someone could legally operate it on a public street.

In addition to again disregarding the entire pre-impound process, the district court erred in two more fundamental ways in addressing this element. The district court dismissed the importance of deterrence under these circumstances and it assumed that the City's primary interest was merely a commercial interest of collecting a debt.

The district court cited one case on deterrence, *Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005). In *Miranda*, police saw a husband give his unlicensed wife driving lessons on a public street. *Miranda*, 429 F.3d at 860-861. After the couple parked in their driveway, the police cited them and then impounded the vehicle. Having no other justification for the impound, the police claimed community caretaking and argued that it would deter future violations. *Id.* at 862. However, the husband retrieved the vehicle the next morning and the court waived the fine in light of the towing fees. *Id.* at 866. Under those circumstances, the court held: "The City has not demonstrated in law or logic that deterrence is a sufficient purpose to justify the particular impoundment that occurred here." *Id.*

In stark contrast to *Miranda*, an impound under Vehicle Code § 22651(i) requires the owner to accumulate at least five delinquent parking citations (17 for Officer), each time providing the opportunity to engage in a robust hearing process that can release the citation based on inability to pay. *Infra* at 62-64. Unlike *Miranda*, under § 22651(i), the City is facing repeat offenders chronically violating traffic laws, ignoring multiple delinquency notices, and causing disproportionate injury to the safety and traffic management of the City. In this case, Plaintiffs concede the validity of the parking citations, and made no effort to engage in any available process. 1-ER-59-60; and see 2-ER-247-247, § 18 (no allegation of engaging process, only of asking unidentified "officials"). Under these circumstances, deterrence takes on a more important role. See *United States v. Treadwell*, 593 F.3d 990, 1014 (9th Cir. 2010)[7] (deterrence outweighs other factors regarding "a likely repeat offender").

Finally, the district court improperly characterized the collection of outstanding citation fees as if it were a commercial debt. 1-ER-66-67. The City's interest in enforcing traffic laws and in "promptly collecting parking penalties" is one and the same, since the collection of penalties is the primary means by which traffic laws are enforced. See *Mendoza*, 51 F.4th at 359; *Yagman*, 852 F.3d at 866.

---

[7] Overruled on other grounds by *United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020).

74

For the district court to dismiss the City's interest in enforcing citation penalties is equivalent to asserting, without evidence, that the City has little or no interest in enforcing traffic laws.

For all the reasons discussed above, Plaintiffs failed to allege a viable claim for procedural due process. This Court should reverse that ruling if it remands this matter for further proceedings.

## III. The District Court Erred by Reviewing Plaintiffs' Equal Protection Claim on a Strict Scrutiny Basis.

The district court erred by reviewing Plaintiffs' equal protection claim on a strict scrutiny basis, instead of a rational basis. 1-ER-79. Plaintiffs allege that the City's refusal to consider their personal inability to pay the fines or impound fees violates their equal protection rights because wealth-based distinctions are prohibited and public entities may not treat people differently or grant them different rights based on ability to pay. 2-ER-259-260. However, with few exceptions, largely limited to criminal prosecution and direct judicial access, poverty and wealth are not suspect classifications that would invoke strict scrutiny. *Mendoza v. Strickler*, 51 F.4th 346, 358 (9th Cir. 2022). In any case, the governing provisions here allow for individual consideration of the ability to pay and they establish guidelines for finding whether someone is indigent and cannot pay. The

district court therefore erred by erroneously reviewing the claim under a strict scrutiny standard when a rational basis standard applies.

To state a 42 U.S.C. § 1983 claim for a violation of the Equal Protection Clause of the United States Constitution, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" *Thornton v. City of St. Helens*, 425 F.3d 1158, 1165 (9th Cir. 2005); quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. [citations] When social or economic legislation as at issue, the Equal Protection Clause allows the States wide latitude, [citations] and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) (Court dismissed equal protection challenge to housing restrictions based on mental disability on rational basis grounds). "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the

76

classification." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). "Mere indifference to the effects of a decision on a particular class does not give rise to an equal protection claim . . . ." *Thornton*, 425 F.3d at 1167.

The district court erroneously found that the Court's holding in *Mendoza*, that "wealth discrimination alone does not trigger heightened scrutiny" in the context of traffic enforcement and suspending a person's driver's license did not apply to the case at bench. *Mendoza*, 51 F.4th at 355. In *Mendoza*, the State of Oregon suspended the plaintiff's driver's license after she failed to pay for various fines arising out of traffic violations. *Id.* at 352. She sued and alleged an equal protection violation, claiming that the "suspension of her driver's license based on her failure to pay traffic fines, 'without first determining that [she] had the ability to pay and [had] willfully refused to make a monetary payment' violates the due process and equal protection principles. . ." *Id.* at 354-355.

*Mendoza* rejected the plaintiff's argument that strict scrutiny should apply to the suspension of a driver's license based on her argument that "driving plays a critical role in a person's ability to work, access healthcare, obtain food, and care for their families.'" *Mendoza*, 51 F.4th at 358. It also distinguished *Bearden v. Georgia*, 461 U.S. 660 (1983), which applied strict scrutiny for the ability to pay in a criminal context: "[T]his entire line of cases, from *Williams* to *Bearden*, addresses only the limitations on imposing subsequent or additional incarceration

77

on those unable to pay their fines." *Mendoza*, 51 F.4th at 357. While *Griffin v. Illinois*, 351 U.S. 12 (1956) also addressed this issue in a criminal context, *Mendoza* recognized that it "been extended to a narrow category of civil cases in which the State must provide access to its judicial processes without regard to a party's ability to pay court fees." *Mendoza* at 355 (cleaned up).

In so holding, the Court noted that "the Supreme Court has stated that wealth-based challenges to driver's license fees are subject only to rational-basis scrutiny." *Mendoza,* 51 F.4th at 358; citing *M.L.B v. S.L.J.*, 519 U.S. 102, 123-124 & n.14 (1996). The Court then analyzed the law using a rational basis review and found that automatically suspending a person's driver's license for failing to pay traffic violation fines did not violate the equal protection clause "even if her failure to pay is a result of indigency" because "[s]uspending her license, even if harsh or unwise, is rationally related to the State's interest in punishing and deterring traffic violations." *Mendoza* at 359.

The similarities between *Mendoza* and the instant case are controlling. Both statutory schemes are based on the government's interest in protecting public safety and the management of vehicle traffic on public roads. Here, as in *Mendoza*, the City's parking violation law did not purposely target the indigent. In both cases, the person had the same opportunities to respond to the traffic citation, challenge its merits, and to seek a payment plan to pay the fine. Plaintiffs

could also seek relief for the inability to pay without showing indigency. *Mendoza*, 51 F.4th at 351; Veh. Code § 40215(c)(7).  In both cases, the possible consequence of the unpaid fines was losing the ability to drive, whether by suspended license or impounded vehicle.  In *Mendoza*, the failure to pay the fines automatically suspended her driver's license, while Plaintiffs had multiple opportunities to respond to parking citations but failed to make any attempt, and then also failed to use the available process to challenge the impound.  *Infra* at 62-64.  Because the context, the offense, and the consequences align, per *Mendoza*, the rational review standard should apply.

This discussion should be merely academic here, because the City considers indigency and the ability to pay into account for purposes of waiving or diminishing citation fees.  The statutes expressly provide for considering the ability to pay, whether as a basis to diminish or avoid the fines altogether.  Veh. Code §§ 40215(b) and (c)(7), 40220; and see *infra* at 63-64.  Given the size of the City and the volume of traffic cases, it used policy standards to guide that consideration.  See 1-ER-78, n.9 (current policy defines indigency as 200% of poverty rate).  In addition, other alternatives such as payment of the parking citation in installments, deferred payment, or community service in lieu of paying the citation due to "an inability to pay the parking penalty in full," are available without requiring "indigent" status.  Veh. Code § 40215(c)(7).

The district court ignores or dismisses these considerations by ruling that the City must provide an individualized financial review for every traffic offender who claims to have difficulty paying the proscribed fine. 1-ER-87. This unsupported proposal fails for multiple reasons. First, the district court cites no authority for requiring individual 'ability to pay' hearings that ignore legislative guidance for everyone receiving a traffic citation. The state legislature and the city authorities responded by issuing a standard to determine indigency for this purpose. Neither the district court nor Plaintiffs challenge the rational basis for that legislative determination. While the district court provides a lengthy discussion based on outside materials about the different considerations it would prefer the legislature to consider in setting policy, this is not the basis for a legal ruling. See 1-ER-84-87. But in any event, even if the City did not clearly articulate its reasons when it enacted the towing laws it is irrelevant "because [the Supreme Court] never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. . . . In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by empirical data." *F.C.C.*, 508 U.S. at 315 (cleaned up).

Second, the district court cited no authority for imposing such a draconian burden on the City. The district court estimated the City towed 100,000 vehicles in

2017, every one of which would be entitled to an independent 'ability to pay' hearing pursuant to the district court's ruling. 1-ER-84. Public entities have a strong interest in preserving limited administrative resources. *Yagman,* 852 F.3d at 866. The legislative approach of determining a reasonable definition of indigency, while still allowing discretionary individual consideration, is a reasonable balance between conflicting interests. The district court provides no basis for overturning the existing scheme, but for its policy preference for a different scheme.

The district court failed to justify evading the pervasive rule, as described in *Mendoza*, using rational basis to evaluate civil legislation on social and economic issues. The Court should reverse the equal protection ruling.

### Cross-Appeal Conclusion

While it may be unnecessary to consider the cross-appeal, if the Court reverses the judgment in some fashion and remands for further proceedings, it should also: (1) affirm that illegally parked vehicles are subject to impound under the community care doctrine, reversing this erroneous summary judgment ruling; (2) reverse the district court's erroneous Rule 12(b) ruling by dismissing the

procedural due process claim; and, (3) reverse the district court's erroneous Rule 12(b) ruling by dismissing the equal protection claim.

Dated:   March 28, 2025

> HYDEE FELDSTEIN SOTO, City Attorney
> KATHLEEN A. KENEALY, Chief Assistant City Attorney
> SHAUN DABBY JACOBS, Supr. Deputy City Attorney
> MICHAEL M. WALSH, Deputy City Attorney
>
> *s/ Michael Walsh*
>
> **MICHAEL M. WALSH**
>   Deputy City Attorney
> Attorneys for Defendants, Appellees and Cross-Appellants
> City of Los Angeles, City of Los Angeles Department of
> Transportation, and Los Angeles Police Department

## Certificate of Compliance

Counsel of Record hereby certifies that the enclosed **APPELLEES**

**ANSWERING BRIEF / CROSS-APPELLANT OPENING BRIEF**

produced using 14-point Roman type, including footnotes; that contains 16,115

words; and that its form and length complies with all aspects of FRAP 32 (a)(5)

and (a)(7).  Counsel relies on the word count of the computer program used to

prepare the brief.

Dated:   March 28, 2025

HYDEE FELDSTEIN SOTO, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney
SHAUN DABBY JACOBS, Supr. Deputy City Attorney
MICHAEL M. WALSH, Deputy City Attorney

*s/ Michael Walsh*
**MICHAEL M. WALSH**
Deputy City Attorney
Attorneys for Defendants, Appellees and Cross-Appellants
City of Los Angeles, City of Los Angeles Department of
Transportation, and Los Angeles Police Department