U.S. Court of Appeals No. 24-5998
(U.S.D.C. No. 2:21-cv-6841-JGB (SPx)

IN THE

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BREONNAH FITZPATRICK et al., individuals and as
class representatives,

Plaintiffs and Appellants,

vs.

CITY OF LOS ANGELES et al.,

Defendants-Appellees.

On Appeal from the District Court for the
Central District of California,
Honorable Jesus G. Bernal, presiding

## APPELLANTS' REPLY / OPPOSITION BRIEF (THIRD BRIEF)

**DONALD W. COOK** CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444 (Phone); (213) 252-0091 (Fax)
Email: manncook@earthlink.net
Attorney for Appellants

TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  The Seizure of McCarthy's Vehicle Was Unreasonable. . . . . . . . . 6

II.  Towing McCarthy's Vehicle Was A Fifth Amendment Violation. 10

III.  Failure To Hear The Class Certification Motion On Its Merits Was
An Abuse Of Discretion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.  Plaintiff Fitzpatrick And Officer's Acceptance Of Settlement Offers
On Their Individual Claims *After* Denial Of Class Certification,
Does Not Moot The Class Claims. . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.  Community Caretaking Cannot Justify Impounding Vehicles For
Unpaid Parking Citations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.  The Vehicle Seizures Violate Due Process. . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF COMPLIANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

00164076.WPD

Table of Authorities

Pages

*Cases*

*Brady v. AutoZone Stores, Inc.*,
    960 F.3d 1172 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Brewster v. City of Los Angeles*,
    672 F.Supp.3d 872 (C.D. Cal. 2023) . . . . . . . . . . . . . . . . . . . . . . . 10

*Cady v. Dombrowski*,
    413 U.S. 433 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Caniglia v. Strom*,
    __ U.S. __, 141 S.Ct. 1596 (2021) . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Clement v. City of Glendale*,
    518 F.3d 1090 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*David v. City of Los Angeles*,
    307 F.3d 1143 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Goichman v. Rheuban Motors, Inc.*,
    682 F.2d 1320 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Kokesh v. Securities and Exchange Commission*,
    137 S.Ct. 1635 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Krimstock v. Kelly*,
    464 F.3d 246 (2nd Cir. 2006) (*Krimstock III*) . . . . . . . . . . . . . . 24

*Kuahulu v. Employers Ins. of Wausau*,
    557 F.2d 1334 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Leslie v. City of Sand City*,
    615 F.Supp.2d 1121 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . 9

*Miranda v. City of Cornelius*,
    429 F.3d 858 (9th Cir. 2005) . . . . . . . . . . . . . . 7-9, 13-17, 20, 24

*Mitchell v. W.T. Grant Co.*,
    416 U.S. 600 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

00164076.WPD

*Nelson v. Colorado,*
    581 U.S. ___ (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*North Georgia Finishing v. Di-Chem,*
    419 U.S. 601 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Ordonez v. Stanley,*
    495 F.Supp.3d 855 (C.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . 24

*People v. Torres,*
    188 Cal.App.4th 775 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Sandoval v. County of Sonoma,*
    912 F.3d 509 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . 16, 25

*Scofield v. City of Hillsborough,*
    862 F.2d 759 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . 16, 17, 25

*Sibron v. New York,*
    392 U.S. 40 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Smith v. Reiskin,*
    2018 WL 7820727 (N.D. Cal. 2018) . . . . . . . . . . . . . . . . . . . . . . 15

*Sniadach v. Family Corp. Of Bay View,*
    395 U.S. 337 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*South Dakota v. Opperman,*
    428 U.S. 364 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Stypmann v. City & County of San Francisco,*
    557 F.3d 1338 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . 20, 22, 23

*United States v. Bajakajian,*
    524 U.S. 321 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

00164076.WPD

*Constitution/Statutes/Rules of Court*

Cal. Const., Art. III § 3.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Cal. Penal Code § 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Veh. Code § 22651 . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 22, 24

Cal. Veh. Code § 22851 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Cal. Veh. Code § 22852 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-25

Cal. Veh. Code § 4000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Cal. Veh. Code § 40000.28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rules of Civil Procedure 23 . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. Const., Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

U.S. Const., Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

00164076.WPD

## I. The Seizure of McCarthy's Vehicle Was Unreasonable.

The LAPD seized Plaintiff McCarthy's vehicle even though he was present and the vehicle was parked and not a traffic hazard. Furthermore, the officers knew that Plaintiff's Dodge was unregistered because of unpaid parking tickets which Plaintiff was in the process of resolving via a City-approved program:

24. On January 15, 2022, Plaintiff McCarty's 2005 Dodge Strada was parked in a safe location on Comanche Avenue north of Nordhoff and obviously not a traffic hazard. The car was parked in front of his RV and he was working on his car. Shortly before 2:00 p.m., LAPD officers pulled up. Plaintiff informed the officers he was the car's owner and was a licensed driver. Plaintiff is informed and believes and based thereon alleges that the officers learned Plaintiff's vehicle had more than five unpaid parking citations and the vehicle did not have current registration because the LADOT had put a hold on the registration on account of the unpaid parking citations.

25. When the officers told Plaintiff McCarty they were intending to seize and impound Plaintiff's vehicle because the vehicle did not have current registration, Plaintiff told the officers he was enrolled in the LADOT's CAPP program and

was just a few days from completing the program. CAPP is the City's Community Assistance Parking Program that sometimes allows people to pay for citations in the form of community service. Plaintiff further told the officers that upon completing the CAPP program, the LADOT would release the DMV hold on the Dodge's vehicle registration thereby enabling Mr. McCarty to secure current registration stickers (Plaintiff had already paid the DMV fees). One of the officers stated he knew nothing about CAPP and didn't care.

2-ER-272 (Second Amended Complaint).

Defendants' argument that the towing was justified because state law authorized the seizure of a vehicle with expired registration in excess of six months (AB[1] @ 22-23), fails. In *Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005), this Court held:

> We begin with the premise, apparently not recognized by the Defendants, that the decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment, as applied to the states by the Fourteenth

---

[1] "AB" refers to "Appellee's Answering Brief / Cross-Appellant Opening Brief."

00164076.WPD

Amendment. "The question in this Court upon review of a state-approved search or seizure is not whether the search (or seizure) was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment." [*Quoting Sibron v. New York*, 392 U.S. 40, 61 (1968)].

429 F.3d at 864-65.

As defendants admit they seized Mr. McCarty's Dodge simply because its registration was more than six months expired, defendants did *not* "consider the location of the vehicle, and whether the vehicle was actually 'impeding traffic or threatening public safety and convenience.'" Thus, the warrantless seizure was unreasonable. *Miranda*, 429 F.3d at 865.

Furthermore, like the district court, defendants ignore entirely that seizing Mr. McCarty's Dodge for its more-than-six-months expired registration, was a seizure to enforce a ***penal*** statute, *i.e.,* Cal. Veh. Code § 4000(a)(1), which in Mr. McCarty's case was a misdemeanor. 2-ER-272 @ ls. 13-15 (McCarty had more than five unpaid parking tickets); Cal. Veh. Code § 40000.28 (Three or more prior violations of vehicle code or local ordinance in prior 12 months made a violation of § 4000(a)(1) a

misdemeanor).[2] Since defendants seized Mr. McCarty's Dodge for a criminal law purpose, that warrantless seizure cannot be justified under the community caretaking doctrine. *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) (The community caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."); *Miranda*, 429 F.3d at 864 (explaining that community caretaking is not a function of criminal law enforcement).

Defendants have not cited any precedent from this Court or any other federal appellate court in which a court held that seizing a vehicle for expired registration is justified under the community caretaking doctrine. To the extent a district court found that a vehicle's expired registration in excess of six months in-and-of itself constitutes community caretaking justification for a warrantless seizure, e.g., *Leslie v. City of Sand City*, 615 F.Supp.2d 1121 (N.D. Cal. 2009), such rulings are contrary to binding Ninth Circuit precedent, *i.e., Miranda v. City of Cornelius*, *supra*. Nor did those decisions consider that seizing a vehicle for expired registration was a seizure to enforce a California penal statute and thus cannot be justified under the community caretaking doctrine.

---

[2] But even if one treats Mr. McCarty's violation of § 4000(a)(1) as an infraction, it is still a crime. Cal. Penal Code § 16 (California has three types of "[c]rimes and public offense": (1) felonies; (2) misdemeanors; and (3) infractions.).

## II. Towing McCarthy's Vehicle Was A Fifth Amendment Violation.

In the opening brief Plaintiff McCarty argued that the seizure and impound of his Dodge was a "Taking" in violation of the Fifth Amendment. Appellants' Opening Brief ("AOB") @ 14 (citing *Brewster v. City of Los Angeles*, 672 F.Supp.3d 872, 973-76 (C.D. Cal. 2023)). Hence, defendants' assertion that Mr. McCarty waived his Fifth Amendment claim (AB @ 21) is meritless. Furthermore, as applied to vehicle impoundments the district court's *Brewster* decision just cited had a detailed discussion of the Fifth Amendment Takings claim. Defendants are well acquainted with that discussion since they are also defendants in *Brewster*, a related case to the present case, and are represented by the same counsel as in this case.

## III. Failure To Hear The Class Certification Motion On Its Merits Was An Abuse Of Discretion.

The most salient fact is that the district court's scheduling orders (see 1-ER-144 & 1-ER-44-45) did *not* set a date for filing a class certification motion even though the orders did set dates for filing other types of motions. That fact, coupled with this district court's practice in the related *Brewster* lawsuit (5:14-cv-2257 JGB) in which the same district judge set dates specifically for filing class certification motions (see AOB @ 25), justified as either reasonable or at the very least excusable neglect, Plaintiffs' counsel's belief that the dispositive motion

hearing date of June 3, 2024, was *not* a deadline date for hearing Plaintiffs' class certification motion (which, of course, is not a dispositive motion).

Defendants' argument, made for the first time on appeal, that the court's orders set a date for "motions governing the proceedings at trial" and thus Plaintiffs' counsel should have known that Plaintiffs' class certification motion was untimely, (AB @ 32), is meritless. The court orders did not set any dates for "motions governing the proceedings at trial"; rather, the orders set dates specifically described as (a) "Initial Expert Disclosure"; (b) "Rebuttal Expert Disclosure"; (c) "Discovery Cut-Off"; (d) "Dispositive Motion Hearing Cut-Off"; and (e) "Last day to conduct settlement conference." 1-ER-44 & 1-ER-144.

Defendants also do not address the district court's fallacious claim that the June 3, 2024 hearing date for "all *dispositive* motions" (emphasis added) also applied to a hearing date for a class certification motion. 1-ER -22-23 (6/14/24 Order). The district court's equating a dispositive motion with a class certification motion was wrong was a matter of law since a class certification motion is, by definition, procedural and *not* "dispositive" – see F.R.Cv.P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

Moreover, the district court's equating  a dispositive motion with

class certification was also contrary to this same court's practice in the related *Brewster* litigation (AOB @ 25).

Then there is the absence of any prejudice to defendants, see AOB at 18-21, a point underscored by defendants' opposition to class certification filed in the trial court. To the trial court defendants' argument was almost entirely procedural (the class certification was two weeks late defendants claimed, see 2-ER-185-89), with the only substantive argument being the meritless assertion stated in a single paragraph that Plaintiffs Fitzpatrick and Officer did not qualify as class representatives. AOB @ 19-20.

## IV. Plaintiff Fitzpatrick And Officer's Acceptance Of Settlement Offers On Their Individual Claims *After* Denial Of Class Certification, Does Not Moot The Class Claims.

Since it is undisputed that Plaintiffs Fitzpatrick and Officer had standing when this case commenced and that they settled their individual claims *after* the district court denied class certification, should this Court conclude that the lower court erred in not hearing the class certification motion on its merits, the proper remedy is remand to the district court to determine if a substitute class representative is available. *E.g., Kuahulu v. Employers Ins. of Wausau*, 557 F.2d 1334, 1336-37 (9th Cir. 1977).

Cases like *Brady v. AutoZone Stores, Inc.*, 960 F.3d 1172 (9th Cir.

2020) which defendants cite (AB @ 27-28) are not identical and are distinguishable. Both Fitzpatrick and Officer had cognitive class claims. Furthermore, putative class representative Plaintiff McCarty did not settle his claim. Therefore, this Court must address the merits of the district court's ruling denying class certification and, if Plaintiffs prevail, leave it to the district court to decide in the first instance if substitute class representatives are needed. *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975).

## V. Community Caretaking Cannot Justify Impounding Vehicles For Unpaid Parking Citations.

First, defendants have not cited a single Ninth Circuit decision post-*Miranda v. City of Cornelius* (9th Cir. 2005) in which the court held that community caretaking justified seizing a vehicle which was not a traffic hazard and not at risk of vandalism or theft.

Second, defendants are arguing for an expansive reading of Fourth Amendment community caretaking to cover debt collection. Such a reading conflicts with the Supreme Court's decision in *Caniglia v. Strom*, __ U.S. __, 141 S.Ct. 1596 (2021). There, the police seized firearms found inside a person's home because the firearms' owner was taken into custody for a psychiatric evaluation. The Supreme Court rejected the First Circuit's attempt at interpreting community caretaking to include a catch-

-13-

all exception for seizing property in order to protect the community:

> *Cady's* [*Cady v. Dombrowski*, 413 U.S. 433 (1973)] unmistakable distinction between vehicles and homes also places into proper context its reference to "community caretaking." This quote comes from a portion of the opinion explaining that the "frequency with which … vehicle[s] can become disabled or involved in … accident[s] on public highways" often requires police to perform noncriminal "community caretaking functions," such as providing aid to motorists. 413 U.S. at 441, 93 S.Ct. 2523. But, this recognition that police officers perform many civic tasks in modern society was just that-a recognition that these tasks exist, and not an open-ended license to perform them anywhere.

*Id.* at 1599-1600.

Plainly, *Caniglia* read the community caretaking doctrine as born out of the necessity for the police to promptly take possession of a vehicle which if not seized, poses an immediate threat to public safety and/or is at risk of vandalism, etc. *Miranda*, 429 F.3d at 864 (explaining community caretaking as set forth in *Opperman*). Seizing a vehicle to collect a debt obviously serves no such interest.

And to the extent defendants rely on state law for towing a vehicle,

to wit Cal. Veh. Code § 22651(i) (five or more unpaid parking citations) or Cal. Veh. Code § 22651(o)(1)(A) (expired registration in excess of six months), in the absence of community caretaking justification, the reliance on state law cannot justify towing the vehicle. *Miranda*, 429 F.3d at 864 ("We begin with the premise, apparently not recognized by the Defendants, that the decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment, as applied to the states by the Fourteenth Amendment.").[3]

Defendants' assertion that the vehicle seizures are justified for "crime prevention and deterrence of would-be violators," AB @ 72, does not constitute community caretaking. *Miranda*, 429 F.3d at 866 ("deterring . . . illegal activity in the future" is inconsistent with community

---

[3] In a case raising the same issue, Judge Jeffrey S. White of the Northern District reached the same conclusion, i.e., debt-collection does not constitute community caretaking:

> Defendants argue that their impoundment of the car was proper in an effort to secure repayment of the debt owed by Mr. Kayode for his previous parking tickets under Vehicle Code Section 22651(i). . . . Towing of the vehicle pursuant to the authority of an ordinance permitting seizure for repeated non-payment of parking fees does not, in and of itself, justify the seizure.

*Smith v. Reiskin*, 2018 WL 7820727 *3 (N.D. Cal. 2018).

00164076.WPD

caretaking); *Sandoval v. County of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018) ("wrong to rely on [] deterrence" to justify a vehicle impound).

Defendants cite *Scofield v. City of Hillsborough*, 862 F.2d 759 (9th Cir. 1988) and *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008). Both are inapplicable. In *Scofield*, the police seized and towed the vehicle because it was illegally parked and unregistered. After paying the fines and registering his vehicle, the plaintiff reclaimed possession. There was no prolonged seizure. The issues were, was plaintiff entitled to a hearing before the police towed the vehicle (he was not); was the plaintiff entitled to notice before the towing (he was not); and was he entitled to an immediate hearing before he paid the tow charges, rather than afterwards (he was not). 862 F.2d at 762-65. Plainly, *Scofield* was all about timing of notice and hearing, not whether a lawfully parked vehicle seized without a warrant violated the Fourth Amendment.

Turning to *Clement*, that too was a due process case. 518 F.3d at 1092. Moreover, in its due process analysis the panel found "the costs and burdens on the car owner associated with a tow can only be justified by conditions that make a tow necessary and appropriate, such as that the car is parked in the path of traffic, blocking a driveway, obstructing a fire lane or appears abandoned." *Id.* at 1094. Clearly consistent with *Miranda*, *Clement* was describing community caretaking. Lastly, *Clement's*

-16-

statement that "a tow may also be appropriate where there are no current registration stickers and police can't be sure that the owner won't move or hide the vehicle, rather than pay the fine for illegal parking" (emphasis added) is dicta, dicta *Clement* supported by citing the inapplicable pre-*Miranda Scofield* decision. 518 F.3d at 1094-95.

There is yet another fundamental problem with defendants seizing and impounding vehicles as hostages unless and until their owners make payments on tickets that defendants demand be paid. The vehicle seizures, both initial and ongoing, are accomplished without any judicial review. When government officials seize property to enforce collection of purported debt and such seizures are effected without any judicial review, the seizures violate the constitution (see next section).

## VI. The Vehicle Seizures Violate Due Process.

The gravamen of the due process claim is that defendants seize vehicles because of unpaid parking citations. If the parking citations accumulate, then defendants instruct the California Department of Motor Vehicles ("DMV") to place holds on Plaintiffs' and class members' vehicle registrations, thereby denying Plaintiffs and class members the ability to obtain current registration unless and until they pay what defendants claims is owed for unpaid parking tickets. 2-ER-258-59 (¶¶63-64); 2-ER-281 (¶65) ("[D]efendants are holding as hostage the vehicles belonging to

Plaintiffs and class members unless and until Plaintiffs and class members pay up."). Consequently, defendants then seize the vehicles under Cal. Veh. Code § 22651(i) (assuming five or more unpaid tickets) or § 22651(o)(1)(A) (assuming registration is expired for more than six months). Moreover, the owner cannot reclaim her vehicle unless she secures current registration which first requires that defendants issue a release of the DMV hold, a hold defendants will not release until the vehicle owner pays the money defendants demand for parking tickets.

So without judicial review of any type whatsoever, defendants seize and refuse to release them until vehicle owners pay defendants the money defendants say is owed. In more colloquial terms, defendants grab a vehicle as hostage or leverage to coerce the vehicle's owner to pay money defendants want. Luca Brasi-styled enforcement without the bloodshed.[4]

Such extremely coercive policy or practice of debt collection under legal process devoid of any judicial review, has long been held to violate due process. In *North Georgia Finishing v. Di-Chem*, 419 U.S. 601 (1975), the question was whether a Georgia garnishment statute violated due process by permitting a court clerk to issue a writ of garnishment in a pending lawsuit without participation by judge, and simply based on an

---

[4] In the 1972 film *The Godfather*, Luca Brasi was the Corleone family's ruthless enforcer whenever Don Corleone needed to "make [someone] an offer he can't refuse."

affidavit of plaintiff or his attorney containing conclusory allegations and which prescribed the filing of a bond as only method of dissolving the garnishment, a garnishment which deprived a defendant of their use of property in the garnishee's hands pending litigation. The absence of any judicial review, the Court held, violated procedural due process. 419 U.S. at 606.

Also on point is the Court's decision in *Sniadach v. Family Corp. Of Bay View*, 395 U.S. 337 (1969). There, the plaintiff-creditor, a holder of a promissory note on which the creditor claimed the borrower defaulted, secured a wage garnishment order without obtaining judicial review; the garnishment remaining in effect until resolution of the underlying debt collection lawsuit. 395 U.S. at 338-39.[5] Because of the "tremendous hardship" imposed by the prejudgment wage garnishment, "as a practical matter [the garnishment may] drive [the] wage-earning family to the wall." 395 U.S. 339, 341-42. Thus, this garnishment in the absence of judicial review violated due process. *Id.*, at 342; *see Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 614 (1974) (explaining *Sniadach*); *see also* 416 U.S. at 616-17 (Upholding Louisiana's pre-judgment property seizure statute

---

[5] "What happens in Wisconsin is that the clerk of the court issues the summons at the request of the creditor's lawyer; and it is the latter who by serving the garnishee sets in motion the machinery whereby the wages are frozen."

because unlike those challenged in other cases, Louisiana's law required a hearing before a neutral judicial officer and "judicial authorization.").

Defendants' debt collection policy is as pernicious as the state laws struck down in *Sniadach* and *Mitchell*. Defendants seek to enforce collection on a claimed debt by seizing one's vehicle, personal property not subject to a contractual security interest in defendants' favor (thus precluding defendants' status as "Repo Man"). Moreover, because "[a] person's ability to make a living and his access to both the necessities and amenities of life may depend upon the availability of an automobile when needed," *Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1342-43 (9th Cir. 1977), defendants' policy of seizing the vehicles can "drive" "to the wall" their owners and families every bit as much as the "wage-earning family" referenced in *Sniadach*.

Defendants' reliance on *South Dakota v. Opperman*, 428 U.S. 364 (1976) to argue that impounding vehicles for debt collection on five or more unpaid parking tickets or expired registration constitute community caretaking justification, e.g., AB @ 53, is meritless. *Opperman* made no such pronouncement; rather the Supreme Court made clear that "community caretaking" means – as *Miranda v. Cornelius* would say nearly 30 years later – "public safety and the efficient movement of vehicular traffic":

In the interests of public safety and as part of what the Court has called "community caretaking functions," *Cady v. Dombrowski*, *supra*, 413 U.S. at 441, 93 S.Ct. at 2528, automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

428 U.S. at 368-69.

The "parking ordinances" to which *Opperman* referred are those concerning "public safety and the efficient movement of vehicular traffic."[6]

---

[6] In *Opperman*, the vehicle was found parked at 3 a.m. in an area where there was no parking from 2 a.m. to 6 a.m., and was given a notice on the windshield that "vehicles in violation of any parking ordinance may be towed from the area." 428 U.S. at 365.

00164076.WPD

By their express terms neither Cal. Veh. Code § 22651(i) (unpaid parking citations) nor § 22651(o) (expired registration) have anything to do with "public safety and the efficient movement of vehicular traffic;" rather, the statutes grant discretionary authority for seizing and impounding a vehicle to hold it hostage until the vehicle's owner pays what government officials say the seizing authority is owed.

Defendants' claim that the post-seizure hearing defendants provide pursuant to Cal. Veh. Code § 22852 satisfies due process for this type of vehicle seizure – towing and impounding the vehicle as leverage to coerce its owner to pay the money defendants claim they are owed (see AB @ 65) – fails. In its present form § 22852 was enacted in 1979. The California Legislature enacted § 22852 and its storage hearing requirement in response to *Stypmann v. City & County of San Francisco*, 557 F.3d 1338 (9th Cir. 1977).[7] *Stypmann* concerned vehicles removed from the street as stored vehicles, i.e., an owner could immediately reclaim their vehicle upon proof of ownership and payment of storage fees. While *Stypmann* did not dispute the police power to have vehicles towed for community

_____

[7] S.B. 848, 1979 Leg., Reg. Sess. (Cal. 1979) ("It is the intent of the Legislature, in enacting this act, to ensure that a person whose unattended vehicle has been ordered by an authorized member of a public agency is provided opportunity for a hearing to satisfy due process as mandated in a recent Appellate Court Decision, Stypmann vs. City and County of San Francisco.").

00164076.WPD

caretaking reasons (blocking traffic, etc.) 557 F.3d at 1342 n.10, the court held that owners were entitled to an "early hearing" in less than five days at which they could "test the factual basis of the tow" without first having to pay the tow charges, etc. *Id.*, at 1343-45.

Plainly, in *Stypmann* the issue was about when and under what circumstances the vehicle owner could challenge the obligation to pay towing and storage charges in order to secure the vehicle's release; prolonged or permanent deprivation of one's vehicle (for failure to pay allegedly unpaid parking tickets) was not on the table.[8] Nor was there any claim that the local government towed and impounded the vehicles to coerce vehicle owners to pay money the local government claimed it was owed, the policy at issue in the present case. Additionally, for Plaintiffs herein and class members, the § 22852 hearing officer is not a disinterested official – he is defendants' employee who decides if Plaintiffs and class members must pay the money the hearing officer's employer says it is owed. Consequently, the § 22852 storage hearing does not satisfy due process for seizing vehicles to enforce debt collection.

Additionally, the hearing officer may (and probably would) claim he

---

[8] In the present case, if Plaintiffs and class members do not reclaim their vehicles within a period of about six to eight weeks, the vehicle is sold pursuant to a statutory lien in favor of the tow company for charges owed the tow company. *See* Cal. Veh. Code § 22851(a); 2-ER-269 (¶15); 2-ER-246-47 (¶15).

00164076.WPD

has no authority to address the issue of the owner's obligation to pay the unpaid tickets; for the hearing officer's only concern is whether the vehicle was towed in compliance with subdivision (I) (unpaid parking tickets) or subdivision (o)(1)(A) (vehicle registration more than six months expired) of Cal. Veh. Code § 22651. The California Constitution, Art. III § 3.5(c), states that the § 22852 City hearing officer cannot

> declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations.

Since no court has declared either subdivisions (I) or (o)(1)(A) of § 22651 unconstitutional (and likely never will[9]) the § 22852 hearing officer – a non-judicial employee of defendants – cannot adjudicate the constitutionality of imposing a subdivision (I) or (o)(1)(A) vehicle impound in the circumstances of the seizures of Plaintiffs' and class members' vehicles. *Ordonez v. Stanley*, 495 F.Supp.3d 855, 864-65 (C.D. Cal. 2020); *Krimstock v. Kelly*, 464 F.3d 246, 255 (2nd Cir. 2006) (*Krimstock III*) (In

---

[9] Although by their respective terms neither subdivision requires community caretaking justification, the absence is remedied by case law imposing a community caretaking requirement. *E.g., Miranda v. City of Cornelius, supra*; *People v. Torres*, 188 Cal.App.4th 775, 792 (2010).

an opinion by then-Circuit Judge Sotomayor, Second Circuit holds that the state must provide "some immediate judicial review of [a prolonged vehicle] retention."); *Sandoval v. County of Sonoma*, 912 F.3d 509, 521 (9th Cir. 2018) (Watford, J., concurring and dissenting in part) (Judge Watford concludes that § 22852 storage hearings for 30 day vehicle impounds do not comport with due process because of the absence of impartial judicial or quasi-judicial review.).

Defendants' reliance on *David v. City of Los Angeles*, 307 F.3d 1143 (9th Cir. 2002), *Scofield v. City of Hillsborough*, 862 F.2d 759 (9th Cir. 1988), and *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320 (9th Cir. 1982) to claim that Cal. Veh. Code § 22852 storage hearings satisfy Plaintiffs' and class members' due process rights, fails. None of those cases concerned the issue this case raises – defendants seizing and impounding vehicles as leverage to coerce their owners to pay money defendants say is owed. Rather, the decisions concerned the payment of charges for the towing and storage of vehicles that could not be safely left on the street and hence, for community caretaking reasons the police towed and stored (not impounded) the vehicles. In all cases the vehicles were subject to immediate release upon payment of only the towing and storage charges; none were vehicles seized to punish or deter the vehicle owners.

Here, by contrast, defendants admit they impound vehicles for

-25-

"crime prevention and deterrence of would-be violators." AB @ 72. Since deterrence is punishment,[10] defendants seize vehicles to deter and punish in the absence of judicial review. *Cf. Nelson v. Colorado*, 581 U.S. ___, 137 S.Ct. 1249, 1255-56 (2017) ("[U]nder the Due Process Clause, [an individual] who has not been adjudged guilty of any crime may not be punished.").

DATED: July 24, 2025

**DONALD W. COOK**
ATTORNEY AT LAW
Attorney for Plaintiffs-Appellants

s/ Donald W. Cook

By_____
Donald W. Cook

---

[10] *Kokesh v. Securities and Exchange Commission*, 137 S.Ct. 1635, 1643 (2017) (Deterrence is punishment); *United States v. Bajakajian*, 524 U.S. 321, 329 (1998) (same).

00164076.WPD

## CERTIFICATE OF COMPLIANCE

Pursuant to Circuit Rule 32(e)(4), counsel for Appellants hereby certifies that the brief uses proportionately spaced type at 14 point, double spaced (except for footnotes), and the word count is 4,580.

DATED: July 24, 2025

**DONALD W. COOK**
ATTORNEY AT LAW
Attorney for Plaintiffs-Appellants

s/ Donald W. Cook

By_____
Donald W. Cook

00164076.WPD

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing APPELLANTS' REPLY / OPPOSITION BRIEF (THIRD BRIEF) with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 24, 2025.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

s/ Donald W. Cook
_____
Donald W. Cook